Duncan *et al. v.* Wallace.

No. 12,148.

DUNCAN ET AL. *v.* WALLACE.

114  169
125  498

114  169
140  645

114  169
146  481

114  169
163  313
e163  314

WILL.—*Legacy.*—*Payment of.*—As the personal estate is made by law the primary fund out of which legacies are to be paid, it will be held, in the absence of countervailing facts, that the testator intended that the personal estate only should be used to pay them.

SAME.—*Intention of Testator.*—*Parol Evidence.*—In determining whether it was the intention of the testator to charge legacies upon land, parol evidence is competent to prove the situation and condition of the testator and his property at the time the will was made.

SAME.—*Charging Legacy Upon Land.*—*Complaint.*—A complaint to charge legacies upon land must show either that the testator had not sufficient personal property at the time the will was executed to pay them, or that he so disposed of such property by the will that it could not be made available for that purpose.

SAME.—*Disposition of Personal Property.*—*Life-Estate.*—Where the will gives the widow a life-estate in the land and in the personal property *thereon,* it does not show a disposition of all the personal property, and, to charge the land with the payment of legacies, the want of sufficient personal property to pay them, at the time the will was executed, must be shown.

From the Dearborn Circuit Court.

*J. K. Thompson, J. E. McDonald, J. M. Butler* and *A. L. Mason,* for appellants.

*G. M. Roberts* and *C. W. Stapp,* for appellee.

ELLIOTT, J.—The controversy in this case grows out of the will of William Duncan, deceased. Omitting the formal parts, that instrument reads thus:

" Item 1st. I give and devise to my beloved wife the farm on which we now reside, situate in Washington township, Dearborn county, Indiana, containing about eighty-two acres, during her natural life, and all the stock, household goods, furniture, provisions and other goods and chattels which may be thereon at the time of my decease, during her natural life as aforesaid, she, however, selling so much thereof as may be sufficient to pay my just debts; and at the death of my

said wife, the real estate aforesaid I give and devise to my sons John W. Duncan and James Duncan and their heirs; if, however, either of my said two sons should die before the decease of my said wife, leaving no children living at the decease of my said wife, then the share of said property above devised to such deceased son is hereby devised and bequeathed to my son William Duncan and his heirs.

" Item 2d. I devise and bequeath to my son William Duncan and his heirs four hundred dollars, to be paid five years after the decease of my said wife.

" Item 3d. I devise and bequeath to my two daughters, now married to Mathias Davis and W. W. Wilson, two hundred dollars each, to be paid seven years after the decease of my said wife.

" Item 4th. I devise and bequeath to my two daughters, now minors, Catharine Duncan and Temperance Ann Duncan, each six hundred dollars, the oldest daughter to receive her six hundred dollars two years after decease of my said wife, and the youngest to receive her six hundred dollars four years after the decease of my said wife.

" Item 5th. I do hereby nominate and appoint my beloved wife guardian of my minor children until they become of the age of twenty-one years.

" Item 6th. I do hereby nominate and appoint my beloved wife, Catharine Duncan, and John W. Duncan executors of this, my last will and testament, hereby authorizing and empowering them to compromise, adjust, release and discharge, in such manner as they may deem proper, the debts and claims due me. I do also authorize and empower them, if it shall become necessary in order to pay my debts, to sell by private sale, or in such manner, upon such terms of credit or otherwise as they may think proper, all or any part of my real estate, and deeds to purchasers to execute, acknowledge and deliver in fee simple."

The complaint of the appellee sets forth the will, avers that the widow of the testator elected to take under the will,

that the testator left no other personal property than that taken by the widow, and that the only personal estate of which he died the owner was taken by her under the provisions of the will.

The appellee contends that the legacy to Catharine Duncan is a charge upon the real estate of which the testator died seized, and the trial court sustained this view. The question for our decision is, was this holding correct?

It is the cardinal rule in the construction of wills that the intention of the testator must be ascertained and carried into effect. This fundamental rule prevails where the question is whether a legacy constitutes a charge upon lands as well as in other cases. Where it appears from the will, either by express words or by fair implication, that it was the intention of the testator to charge the land he gives to a devisee with the payment of specific legacies, the devisee will take it subject to that burden.

In determining whether it was the intention of the testator to charge legacies upon land, the words of the will are, of course, to be chiefly regarded, but assistance may be derived from circumstances existing at the time the will was executed. We do not mean that parol evidence may add words to the will or subtract words from it, but we do mean that parol evidence is competent to prove the situation and condition of the testator and his property. *Pocock* v. *Redinger*, 108 Ind. 573.

To illustrate, if a testator should have no personal property whatever, and of that fact have knowledge, parol evidence may be given to prove these facts in a case where legacies are specifically bequeathed. In this case we agree with appellee's counsel that, to the extent indicated, parol evidence is competent, and should be considered in construing the will.

Where a testator gives legacies and so disposes of all his personal property that it can not be made available for the payment of the legacies, the natural presumption is, that he intended to charge the land with the payment of the legacies,

since a different rule would attribute to him a purpose to make a gift in appearance and not in reality. This result, however, can only take place where it is clearly apparent that the personal property was, by the act of the testator himself, placed where it could not be made available for the payment of legacies. So, where a testator has no personal property at the time he executes a will and bequeaths specific legacies, the reasonable presumption is that he intended to charge them on the land, for it is not to be. presumed that he did no more than make an empty show of giving a bounty to the legatees. But this presumption does not prevail where there is personal estate at the time the will was executed, although it may subsequently be lost to the testator. In discussing the general subject, it was said by FOLGER, C. J., that: " It is assumed that no man, in making a final disposition of his estate, will make a legacy, save with the honest, sober-minded intention that it shall be paid. Hence, when from the provisions of a will prior to the gift of legacies it is seen that the testator must have known that he had already so far disposed of his personal estate as that there would not be enough left to pay the legacies, it is reasoned that the bare fact of giving a legacy indicates an intention that it shall be met from real estate." *Hoyt* v. *Hoyt*, 85 N. Y. 142.

In the case of *McCorn* v. *McCorn*, 100 N. Y. 511, a question of a character similar to that before us was presented, and it was held that the will impliedly charged the legacies upon the land, the court saying, among other things, that : " His personal estate was insufficient even to to pay his funeral expenses, and the two legacies to the widow and son were mere mockeries unless meant to be a charge upon the real estate." The cases, ancient and modern, sustain this general doctrine. *Aubrey* v. *Middleton*, 2 Eq. Cas. Abr. 497; *Lypet* v. *Carter*, 1 Vesey Sr. 499; *Cross* v. *Kennington*, 9 Beav. 150; *Elliott* v. *Hancock*, 2 Vern. 143; *Webb* v. *Webb*, Barn. Ch. 86 ; *Corwine* v. *Corwine*, 24 N. J. Eq. 579; *Van Winkle* v. *Van Houten*, 2 Green (N. J. Eq.), 172; *Scott*

v. *Stebbins,* 91 N. Y. 605. While we assent to the doctrine of these cases, we think that, in order to successfully invoke its application, it must appear that there was not sufficient personal property at the time the testator executed his will to pay the legacies. It is not enough that the personal estate subsequently fails, for, to justify a resort to the land, it must appear that the will so disposed of it as that it could not be made available for the payment of the legacies, or it must appear that the testator had not sufficient personal property at the time the will was made to pay the legacies and had knowledge of that fact. *Lindsey* v. *Lindsey,* 45 Ind. 552, 563; Willard Equity, 489.

Personal estate is primarily the fund out of which legacies are to be paid, and where there is a specific devise of land, and no words creating a charge on it, the legacies must, as a general rule, be paid out of the personal property. *Lindsey* v. *Lindsey, supra.*

As the personal estate is made by law the primary fund out of which legacies are to be paid, it must be held, in the absence of countervailing facts, that the testator intended that the personal estate only should be used to pay them. It follows from what we have said that the appellees can not charge the land, unless it appears from the complaint either that the testator had not sufficient personal property at the time the will was executed, or that he so disposed of it by the will as that it could not be made available for the payment of legacies.

The complaint does not aver that the testator did not have personal property sufficient to pay the legacies at the time of his death. It does aver that the widow of William Duncan died leaving no part of the personal property bequeathed to her, and that the testator " left no personal property whatever other than that which was taken by the widow as allowed to her by the will." These averments do not assert that, at the time the will was executed, the testator did not have personal property sufficient to pay the legacies; on the

contrary, they concede that there was then personal property, for they affirm that it was taken by the widow under the will. The case, therefore, must turn upon the question whether the will so disposed of the personal property as to prevent resort to it for the payment of the legacies. If the will gave all the personal property to the widow, leaving nothing of the personal estate undisposed of, then, under the authorities we have referred to, the land may be charged, but it is only in that event that it can be held for the payment of the legacies. Our conclusion is, that the will does not dispose of all the personal property of which the testator was the owner. The will gives the wife the land described, "during her natural life, as aforesaid, and all the stock, household goods, furniture, provisions and other goods and chattels which may be thereon at the time of my decease, during her natural life, as aforesaid, she, however, selling so much thereof as may be sufficient to pay my just debts." This, it is evident, disposes only of the personal property on the land, and it can not be assumed that this was all the property owned by the testator at the time the will was executed. He may, for anything that appears, have had other personal property at the time he executed his will. As the presumption is that a testator intends that legacies shall be paid out of the personal property, unless it is otherwise provided, we must hold that there was personal property, since the contrary is not averred. If there was personal property at the time the will was executed sufficient to pay the legacies, then its subsequent loss or sale would not warrant the presumption that the testator meant to charge the land. Whether this was or was not his intention is to be ascertained from the situation and condition of affairs at the time he made his will, and not from the condition of affairs at a subsequent time. If a man has abundant personal property at the time he gives a legacy, then the legatee is confined to the personal estate. If that subsequently fails, the legacy fails, unless the words of the will indicate a different intention.

Duncan *et al. v.* Wallace.

The right to resort to real estate is not a primary one, and the legatee who asserts that right must affirmatively show such facts as call it into existence. He can not invoke a presumption without facts to support it, or words sustaining it, for, without such facts or words, the presumption is in favor of the devisee. If the facts are not such as to create the presumption that the testator intended to charge the land the devisee will prevail, unless the language of the will itself creates the charge on the land.

We are of opinion that only a life interest in the personal property was vested in the widow. She is not clothed with an absolute power of disposition, but has only authority to dispose of the property to pay debts. The words of the will creating her estate unequivocally limit her interest to one for life, and there are no words inconsistent with them. The estate expressly created is not enlarged by any superadded words; on the contrary, the power to dispose of the personal property is limited to a single purpose, that of paying debts. *Goudie* v. *Johnston*, 109 Ind. 427.

Another consideration of importance is, that the terms used in disposing of the personal property are substantially the same as those employed in disposing of the real estate, and they are associated together in one clause, thus evincing an intention to give the wife a life interest in both kinds of property. It would violate all rules of construction to hold that the testator created one estate in one kind of property and another estate in the other kind, where, as here, substantially the same words are employed in disposing of both kinds. This conclusion is strengthened by the fact that the legacies are made payable after the wife's death, thus indicating that a life-estate in all the property was devised to her.

We can not avoid the conclusion, after a very careful study of the case, that the complaint as it now stands is insufficient.

Judgment reversed.

Filed March 20, 1888.