MINNIE REID

v.

MARTIN CORRIGAN et al.

*Filed at Ottawa October 28, 1892.*

1. WILLS—*fund liable for debts and general legacies.* In the administration of testate estates the personal property is the primary fund for the payment of debts and general legacies, unless a contrary intention on the part of the testator satisfactorily appears. But such intention need not be shown by express words,—it may be implied from the whole will, taken together.

2. Where a testator gives legacies, and so disposes of all his personal property that it can not be made available for the payment of the legacies, it will be presumed that he intended to charge his land with the payment of the legacies, as a different rule would attribute to him a purpose to make a gift in appearance and not in reality.

3. A testator devised to his wife certain real estate and all his personal property of every description, after which he gave his niece $3000. He then devised certain other land to charitable associations, and by a residuary clause devised "all the rest, residue and remainder of all my (his) real estate, without any exception, to" certain relatives named: *Held,* that the devise to his niece was a charge upon and payable out of the residuary devise, although it was of realty.

4. SAME—*bequest of personal estate—whether liable for payment of legacy.* While it is true that a bequest of all the testator's personal estate is ordinarily treated as a general legacy, yet when an intention to give it, discharged of its primary liability for debts and general legacies, clearly appears, it must be treated as a special bequest, and exonerated accordingly.

5. The express gift of all of the testator's personal estate to his wife is in effect the expression of an intention that no one else shall have it, or any part of it; and unless a legacy given in another clause of the will is to be paid out of residuary property, it must abate, and the intention of the testator must be defeated.

6. SAME—*rule of construction to give effect to intention.* It is an elementary rule in the construction of wills, that effect must be given to the intention of the testator, if it can be done consistently with the rules of law. So a special bequest will not be allowed to abate, unless, by no fair interpretation of the entire testamentary devise, can it be ascertained from what part of his estate the testator intended it should be paid.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. L. C. COLLINS, Judge, presiding.

Mr. RICHARD PRENDERGAST, for the appellant.

Mr. P. McHUGH, for the appellees.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was a bill in chancery, in the circuit court of Cook county, by appellant, against appellees and Mary Corrigan, executrix of the last will of Michael Corrigan, to construe the will of said Michael, and enforce the payment of a legacy of $3000 made to her. Said will is set out at length in the bill, as follows, to-wit:

"I, Michael Corrigan, being of sound mind and memory, do make this my last will and testament:

"*First*—I give and devise unto my wife, Mary, the Corrigan Block, and the ground upon which it stands, situate on the northeast corner of State street and Hubbard Court, (not meaning to include the property known as the Emery or Panorama Hotel). I also give and devise to her the homestead, situate on the corner of Twenty-ninth street and Prairie avenue, forever, and also all my personal property of every description.

"*Second*—I give the sum of $3000 to my niece, Minnie Reid.

"*Third*—I give and devise the seventy-five feet of land I own on State street, south of Twenty-ninth street, to the Little Sisters of the Poor and the St. Vincent Foundlings' Home, both of Chicago, share and share alike.

"*Fourth*—I give and devise all the rest, residue and remainder of all my real estate, without any exception, to my brother, Martin Corrigan, my sisters, Margaret Clifford and Jane Keefe, and my sister-in-law, Johanna Corrigan, and their heirs, share and share alike; but the portion to said Johanna

Corrigan is to be held in trust by her, for her children, Richard, Lizzie and Jennie.

"*Fifth*—I appoint my wife executrix of this my last will, without bond.

"All the above property is situate in the county of Cook, and State of Illinois.

"In witness whereof I have hereunto set my hand and seal this third day of October, A. D. 1887.

his<br>
MICHAEL X CORRIGAN.   [Seal.]"<br>
mark.

It is alleged in the bill that the testator died on the same day he executed said will; that there are no debts, or charges against his estate; that the real estate devised to his wife was of the value of $100,000, and the personal property bequeathed to her worth about $20,000,—$19,000 of which was cash in bank; also, that the devise to appellees, made by the fourth clause of the will, was of the value of $100,000, yielding a rental of some $500 per month. It is further alleged in the bill that the complainant has demanded the payment of said legacy from the said Mary Corrigan, both as executrix of said will and individually, but she has refused to pay the same, claiming that no fund has come into her hands, in either capacity, out of which the said legacy should be satisfied; also, that she has made a like demand of the devisees named in the fourth clause, who likewise refuse to pay her. The prayer is, that the court ascertain the intention of the said Michael Corrigan as to the fund or property out of which her said legacy should be paid, and decree accordingly.

Mary Corrigan and the appellees answered the bill, each admitting that said legacy had not been paid, and their refusal to pay the same, each claiming that it can not be charged upon the bequest to them.

On a hearing the court found and decreed that the complainant was entitled to have her said legacy paid out of the real estate devised to appellees, and made it a lien on the same.

On appeal by appellees, the Appellate Court for the First District reversed the decree of the circuit court, and the complainant below now prosecutes this appeal.

In the administration of testate estates the personal property is the primary fund for the payment of debts and general legacies, unless a contrary intention on the part of the testator satisfactorily appears. It is sometimes difficult to determine whether or not such contrary intention does appear. But it is no longer necessary that it should be shown by express words, —it "may be implied from the whole will taken together." *Heslop* v. *Gatton, Exr.* 71 Ill. 528, and authorities cited.

That it was the intention of Michael Corrigan to give appellant the sum of $3000 by his last will, is clearly expressed. It is an elementary rule in the construction of wills, that effect must be given to that intention, if it can be done, consistently with the rules of law. In other words, this bequest must not be allowed to abate, unless it shall be found that, by no fair interpretation of the entire testamentary devise, can it be ascertained from what part of his estate the testator intended it should be paid, therefore, the only question here presented for decision is, can it be charged upon the real estate devised to appellees by the fourth or residuary clause. In determining that question it becomes important to ascertain, first, whether by the terms of the preceding clauses it can, consistently with the intention of said testator, be paid out of any other part of his estate.

That it was not his purpose to charge it upon the real estate devised by the first and third paragraphs of his will is conceded. It is said, however, that the personal estate bequeathed to the wife is not exonerated from its payment. The argument in support of this contention is based upon the foregoing rule, by which the personalty is made the primary fund for the payment of all general legacies. We have, however, seen, that rule ceases to be applicable, whenever a contrary intention clearly appears. Here, all the personal property, of every

·description, is given to the wife without limitation or qualifi-
·cation. How could an intention to exonerate this property
be more clearly expressed than by the language here used?
While it is true that a bequest of all the personal estate is or-
dinarily treated as a general legacy, yet where an intention to
give it discharged of its primary liability for debts and general
legacies clearly appears, it must be treated as a special be-
·quest, and exonerated accordingly. 2 Jarman on Wills, 499,
and cases cited in note.

But suppose it should be held that the bequest of the per-
sonal property, as here made, is a general legacy, by what rule
of law can that general legacy be taken from the wife and
given to another general legatee? Especially how could it be
said that the testator *intended,* having made that bequest to his
wife, that it should be taken from her, in whole or in part,
for the payment of the legacy to his niece, subsequently made?
It is just as clear that the maker of this will did not intend
the $3000 dollars to be taken out of his personal estate as if
he had said so in terms. The express gift of all of that class
·of property to the wife is, in effect, the expression of an inten-
tion that no one else shall have it, or any part of it. One of
two things must therefore follow: either the legacy to appel-
lant must abate, and to that extent the will of the testator be
·defeated, or said legacy must be paid out of the "rest, residue
and remainder" of the estate.

It was said in *Godard* v. *Pomeroy,* 36 Barb. 556: "It will be
·seen that the testator knew, when he executed the will, that
at the time these three legacies would fall due there would be
·only $1000 of personal property which would be applicable to
their payment, as he had expressly bequeathed all his per-
·sonal estate except that sum, and disposed of the interest of
that sum also, together with the income of the real estate,
thus intentionally leaving the real estate, only, out of which
the greater portion could be paid." So ELLIOTT, J., said, in
*Duncan et al.* v. *Wallace,* 114 Ind. 169: "Where a testator

gives legacies, and so disposes of all his personal property that it can not be made available for the payment of the legacies, the natural presumption is that he intended to charge the land with the payment of the legacies, since a different rule would attribute to him a purpose to make a gift in appearance and not in reality." To the same effect is the language of FOLGER, C. J., in *Hoyt* v. *Hoyt,* 85 N. Y. 142, and FINCH, J., in *McCom* v. *McCom et al.* 100 N. Y. 511. It is true, in these cases the residuary clauses of the wills before the courts were broad enough to cover personal as well as real property, but the intention to charge the realty was not inferred because there was a blending of the two classes of property, but from the fact that the personalty was so disposed of that it could not be made available for the payment of the legacies given.

Suppose the language of the residuary clause here had read, "all the rest, residue and remainder of my real and personal estate," could it have been said that an intention to charge the real estate was more clearly shown than by the language which was used? There being no personal estate left, language blending real and personal property would have been meaningless; and yet, if the testator had said, "all the rest of my real *and personal* estate," instead of "all the rest of my real estate," there would have been no difficulty in finding authorities sustaining a charge of this legacy upon the real estate devised in the residuary clause. See cases cited in note 14, p. 427, 3 Jarman on Wills ; *American Cannel Coal Co.* v. *Clemens,* 132 Ind. 163. Not because there would have been a blending of property, but because the language would have indicated an intention to give to the residuary devisees only the residue of his estate which should remain after the previous legacies and devises were satisfied. If the residuary clause in this will had read, "all the rest, residue and remainder of my *estate*" or "*property,*" it would scarcely have been questioned that the testator only intended appellees to have so much of

the rest of his real estate as remained after the payment of the legacy to appellant. When that clause was written no property remained upon which it could operate, except real estate, and we think it far more reasonable to suppose that the words "real estate" were used in the sense of "property," or "estate," generally, than that the testator intended by their use to defeat the legacy which he had just willed to his niece. By holding that the expression, "rest, residue and remainder," was intended to limit the devise to appellees to that part of his estate which should remain after deducting all that had been previously bequeathed, effect can be given to the entire will, whereas to say that by their use he intended to devise all of his real estate not previously devised, without reference to said legacy, we are forced to defeat an intention as clearly expressed as language can make it, or attribute to him the inconsistency of having made his niece the object of his bounty by words, at the same time intending that she should never enjoy that bounty.

The cases in which questions like the one here presented have arisen, are almost without number. As is said in Maddox's Chancery, page 588: "It is impossible to define what circumstances will be sufficient to show this intention. It must arise from the context of the will. The intention may be found, not merely in the mode in which the personal estate is given, but also in the mode in which the real estate is given or the application directed to the payment of the debts."

We have given this case careful consideration and reconsideration on a petition for rehearing, and we can not escape the conviction that the testator intended this legacy to be paid out of the estate devised to these appellees. This conclusion in no way conflicts with the rule of law announced in *Heslop* v. *Gatton, Exr. supra.* There it was held there was nothing in the will then before the court from which an intention to charge the realty could be inferred, while we hold that here such intention does appear.

The judgment of the Appellate Court will stand reversed and the decree of the circuit court affirmed, and the cause will be remanded to the latter court, to proceed in accordance with its decree and the views here set forth.

*Judgment reversed.*