DICK ET AL. *v*. GLENN ET AL.

[No. 27,481. Filed February 24, 1941. Rehearing denied March 24, 1941.]

284

*Lesh & Lesh,* of Huntington, and *Lesh, Lesh & Lesh,* of Indianapolis, for appellants.

*Burr Glenn,* of Huntington, and *Morris & Newkirk* and *George Kowalczyk,* all of Fort Wayne, for appellees.

RICHMAN, J.—This appeal is from a judgment authorizing appellee Burr Glenn, as Trustee under the will of Julius Dick, deceased, to sell real estate in Huntington County, Indiana, of which decedent died the owner, to satisfy a balance found to be due his widow, Laura S.

Dick, under the provisions in decedent's will and a codicil thereto. There was a trial, special findings and conclusions of law. Motion for a new trial was overruled. Error is assigned on each of the conclusions and the overruling of the motion for a new trial.

Fred Dick alone assigns error and is herein designated as appellant.

The sufficiency of the pleadings is not questioned. To the complaint there were a general denial and affirmative answers, demurrer to which was overruled. The facts found include the material facts alleged in the answers which is the occasion of appellant's contention that the court's conclusions of law are wrong because they conflict with his prior ruling on demurrer. The trial judge had the right to change his mind during the progress of the action. Only his final decision is here in issue. The essential facts were as follows:

At the time Julius Dick executed his will he was domiciled in California and owned real and personal property there and also in Indiana. February 2, 1928 he executed his will, July 20, 1928 a first codicil, and July 3, 1931, a second codicil all of which after his death, September 25, 1931, were admitted to probate November 19, 1931 in the Superior Court of Los Angeles County. Certified copies were later probated as a foreign will by the Huntington Circuit Court.

After directing payment of his debts, he makes three specific money bequests, then, in paragraph fifth, devises in fee simple his residence property on Micheltorena Street, Los Angeles, and personal property therein, to his wife Laura Dick. (By the first codicil, this property having been sold, other residence property was substituted.) The sixth and seventh paragraphs of the will are identical except that the sixth covers his

residuary estate situate in California and names a California trust company as trustee and the seventh covers his residuary estate outside of California and names a Huntington bank as trustee. The latter after it qualified became insolvent in 1933 and appellee Glenn was substituted.

The seventh paragraph provides that the "remainder of my estate, . . . situate WITHOUT the State of California . . . I give, devise, and bequeath to the Citizens State Bank of Huntington, Indiana . . . but in TRUST nevertheless:" (1) to "possess, manage, sell, convey, mortgage, lease, invest and reinvest," sales to be for reinvestment only; (2) "to collect the income and pay expenses therefrom and" (3) "to pay the entire 'Net Income' of said trust property in convenient monthly installments" to his wife Laura Dick, "during her entire life, . . . The payments to commence immediately after my death." The eighth paragraph provides that both trusts shall terminate upon the death of Laura Dick, and upon the termination thereof all of said trust property shall be distributed: (a) The real estate here involved upon which was a store building,

"to go to . . . my nephew, FRED DICK, to have and to hold the same to him absolutely and forever; and in the event my said Trustees make a sale of the said interest in said store-building prior to the termination of this Trust, an amount equal to the sale-price to go to . . . my said nephew, FRED DICK, to have and to hold the same to him absolutely and forever."

Subdivisions (b), (c) and (d) provide for distribution of money to named beneficiaries and (e) gives the residue to decedent's brother Jacob Dick and his nephew, appellant, share and share alike. The widow

is named executrix and given power of disposition of both real and personal property.

The second codicil reads as follows:

"NOW I DO HEREBY DECLARE This instrument to be the Second Codicil to said Will, and referring to Subdivision '3' of the 'SEVENTH' paragraph of the said Will of February second, 1928, in which a Trust is created and the entire net income from the trust to be paid to my wife, MRS. LAURA S. DICK, I hereby reaffirm the said paragraph and the said Will and the said Codicil, and in addition to the provisions contained in the said third subdivision of the SEVENTH paragraph, I hereby direct that in the event the said net income amounts to less than Five Thousand Dollars in any calendar year that the Trustees sell or dispose of, according to their best judgment, such of the corpus of the said estate to provide sufficient funds to pay my said wife a minimum amount of Five Thousand Dollars per year. In other words, if the said net income is less than Five Thousand Dollars there will be sufficient of the corpus of the said estate sold to make the total payment in every calendar year the sum of Five Thousand Dollars."

At the time of his death testator owned three tracts of real estate in Huntington. The first is the one described in Paragraph Eighth (a) of the will, *supra*, estimated to be worth $12,000 to $15,000. The other two are considered worthless. He also owned stocks in several corporations, the certificates for which were in the Huntington bank, which later, after court order, delivered them to the executrix, who sold them in the course of administration of the estate. In California the testator at the time of his death owned some stocks and one lot in Wilshire-Harvard Heights in Los Angeles. He owned no other property.

On the same day the will and codicils were by the widow offered for probate in California, she filed her verified petition in the same court for a "family allow-

ance," for which provision is made by statute. The petition recites the death of Julius Dick, her survival "as members of his family," that she "is entitled to an allowance out of the property of the estate of a reasonable amount for the maintenance of herself according to their circumstances and manner of living," and that the property of said estate exempt by law from execution is not sufficient for her support. The petition then recites the provisions, quoting them, of the second codicil and Paragraph Seventh, subdivision 3 of the will, states that $5,000 per year ($416.67 per month) is a reasonable allowance and asks therefor.

On the day the will was probated an order was made by the court,

> "that there be allowed and paid from the funds of said estate to Laura S. Dick, widow of said deceased, for the support and maintenance of herself, the sum of $5,000 per year, payable monthly, *the same to be in lieu of* provisions in Subdivision 3, paragraph 7, in second codicil to the last will and testament of decedent, said allowance to date from the date of death of said deceased, to-wit: September 25, 1931, and to continue until the further order of the court." (Our italics.)

The lot in Wilshire-Harvard Heights was on her petition set off to the widow as a homestead by action of the court where the estate was pending. The real estate covered by the first codicil was at the time of testator's death owned by him and his wife jointly and passed to her by survivorship. All other assets, except the Indiana real estate, were reduced to cash by the executrix, who paid funeral expenses, taxes and costs of administration, including $2,350 on the widow's allowance, leaving in the estate a balance of $147.75, which will be needed for costs, etc., on final settlement.

It was further found that from the date of testator's death to her death the widow should have received

under the will, at the rate of $5,000 per year, a total sum of $18,333.34, that the trustees have paid her (from income) $1,550, and the executrix has paid her $2,350, leaving a balance of $14,433.34 due at the time of her death and payable to the appellee administratrix of her estate.

Upon the facts four conclusions are stated: (1) that the administratrix is entitled to receive that amount from the trustee with interest from the date of the widow's death; (2) that this sum is a lien and charge on the real estate which should be sold by the trustee for the payment thereof; (3) that appellant's interest in the real estate is inferior to the widow's rights aforesaid, and (4) providing for the terms of sale and distribution.

Insufficiency of the evidence to sustain the findings is urged in that the findings were incomplete because no effect was given to certain letters in evidence dated about the times of the execution of the will and codicils indicating that the testator then owned property from which he was receiving income of about $5,000 per year and that other evidence not referred to in the findings indicated that the widow had considerable separate property at the time of the testator's death. If these facts were essential to appellant's defense, the court's failure to find them is equivalent to a finding against him upon whom was the burden. Moreover, appellant's statement of the evidence does not purport to contain all of the evidence but only what he says "seems to be the material parts that have not been fully stated in connection with the statement of the special findings." If error existed it has not been properly presented. But the facts if they had been found would not affect our decision.

If any question is raised by the assignment that the decision is contrary to law it arises also upon the conclusions from the facts found and does not require separate discussion.

The main question presented is whether by the widow's acts in accepting an allowance and homestead in California, the Indiana trustee is barred from selling the real estate in Huntington to pay her administratrix the annuity provided by the will.

Questions of conflict of laws and judicial notice are not stressed by the parties. Appellant says that because the land is in Indiana "the title interests therein are governed by the laws of this state." Appellees, while citing many California decisions, state that they "have insisted throughout this litigation that the court must determine the questions herein raised by the law of Indiana." The parties are therefore in no position to complain if we take them at their word and proceed to examine the questions from an Indiana viewpoint.

On its face the complaint, setting out the pertinent provisions of the will, clearly entitles the trustee to the relief prayed. Appellant argues that such relief may not be granted because the widow applied for and received certain statutory benefits in California. There is no presumption that those benefits were in lieu of rather than in addition to her rights under the will. Under our statute there is a conclusive presumption that she took under the will. *Whitesell* v. *Strickler* (1906), 167 Ind. 602, 78 N. E. 845; *Easterday* v. *Easterday* (1938), 105 Ind. App. 80, 10 N. E. (2d) 764. And, inasmuch as she, until her death, and her administratrix thereafter, were parties below, approving the action of the trustee for her benefit, it is apparent that she did not consciously abandon her testamentary rights. Apart from the language of the order

of allowance, the bald facts upon which we are asked to conclude that she elected not to take under the will or is estopped from so claiming, are that a residence property in California, which otherwise would have gone into a trust for her benefit, was set off to her by law and that a statutory allowance of $416.67 per month until the further order of the California court used up funds which also would have gone into that trust for her benefit. We may assume, in the light of all the circumstances, that she considered herself entitled to the statutory as well as testamentary benefits. If she was not so entitled, which we need not decide, she could have been ordered to refund the statutory benefits. Had she then refused, it might well be said that she had elected. If a different result would be reached under California law we suspect that such law would have been pleaded and proved.

But appellant insists that because of the words "in lieu of" in the order of the Superior Court of Los Angeles County an election took place when the widow accepted payments under that order. Her petition for the allowance recites verbatim the pertinent testamentary provisions made by her deceased husband for her support during the remainder of her life. It would seem that they were inserted for the court's information, for the petition does not seek to substitute the allowance for the annuity.

That the allowance was not to be permanent appears from the prayer and the order itself, each stating: "until the further order of the court." It may be assumed that the purpose of the allowance was to support her during the period of administration before the trustee should obtain from the executrix the residuary personal property.

The court's order fixes the allowance at "$5,000 per year, payable monthly, the same to be in lieu of" the testamentary provisions. Appellant contends that the word "same" refers to the allowance itself and that if she accepted any benefits thereunder, even one monthly payment, she thus elected to abandon any rights under the testamentary trust. Appellees assert that "same" refers to the monthly sums payable and that the court meant there should be no duplication of monthly payments, that is, one from the executrix, against whom the order was issued, and the other from the trustee, each for $416.67 per month.

We fail to see any reason for inferring that the order was intentionally so worded as to require that she elect one of two methods of support. It is hardly conceivable that on an *ex parte* petition the judge should impose any such choice upon the widow. Nor is it plausible that she knowingly made a choice that would so seriously operate to her detriment.

In determining whether the widow intended to make an election we may consider the factual situation after the testator's death. When Julius Dick died he had little property in California, certainly not enough to provide his widow an annual income of $5,000. She would have been foolish to look only to the California estate for support when she already had, as sole beneficiary during her lifetime, all the trust property, principal as well as income, in Indiana as well as in California. It must have been apparent also that decedent's whole estate at the time of his death was not and could not be invested to provide only from income $416.67 per month and that the trustee would be compelled to sell assets of the trust, not an easy task in October, 1931, and certainly one requiring time. In the mean-

while the statutory allowance was available and probably intended for the very purpose of bridging the administration period.

The language of the order is ambiguous and should be given a reasonable interpretation consistent with the facts and circumstances then existing. So viewed we think the court intended and the widow understood that the payments by the executrix were to continue indefinitely until the trustee began like payments and that she would not be entitled to a double allowance in any month. In other words upon the payments due under the will it was intended that the trustee be credited with the amounts of anticipatory payments made by the executrix pursuant to the allowance. So understood there is no inconsistency between the two provisions and consequently no occasion to elect.

In *Waggoner* v. *Waggoner* (1910), 111 Va. 325, 68 S. E. 990, 30 L. R. A. (N. S.) 644, 648, it is stated:

"The proof of an election may be express or it may be implied from the acts and conduct of the party, but in either case it must have been with knowledge of the party's rights and with the intention of making an election."

This rule has been applied in many cases collected in a note in 49 L. R. A. (N. S.) 1081, 1106. It is referred to because of our conviction that in the circumstances surrounding the making of the California court order and the widow's acts pursuant thereto there are altogether lacking the elements of knowledge and intention which ought in some measure to be present if she is to be barred because of a choice between inconsistent rights. The word "choice," used in 2 Page on Wills, § 1187, quoted by appellant, itself indicates a conscious weighing of advantages and deliberate taking of one to the exclusion of the other.

Since the will on its face gave to the trustee the right which he seeks to enforce in this action, if it is to be defeated by acts of the widow after decedent's death, the burden is upon him seeking to take advantage of those acts to show more clearly than he has shown that she or her administratrix are barred from accepting the relief sought.

The court below evidently took the view that the annuity and the allowance ought not to be concurrent, for in his finding he computed the amount payable at the rate of $5,000 per year from the date of testator's death to the date of the widow's death, deducted therefrom the payments made both by the executrix and the trustee, and adjudged that the balance with interest from the date of her death was to be made out of the sale, plus costs and expenses, leaving for appellant any balance remaining. This ignores the rights of the specific legatees named in Paragraphs second, third and fourth of the will, of which, however, no complaint is made by them.

We find nothing in the cases cited by appellant conflicting with these views. *Langley* v. *Mayhew* (1886), 107 Ind. 198, 6 N. E. 317, 8 N. E. 157, and *Stiglitz* v. *Migatz* (1916), 61 Ind. App. 529, 109 N. E. 809, involve our statutory widow's $500 allowance and hold that on account of the terms of the respective wills the widow was not entitled to the allowance and her application therefor was denied. They do not decide that she would have had to forego the testamentary benefits if she had already taken the allowance. That question apparently has not arisen in Indiana. It would seem equitable in such a case to require her to pay back the allowance. In the event of her refusal so to do, then her testamentary rights might be denied. The same thing has been accomplished in this case by credit-

ing the trustee with payments made under the allowance.

*In re Cowell's Estate* (1913), 164 Cal. 636, 130 P. 209, instead of aiding appellant, discloses a construction of the California statute in harmony with our views. In *American Car & Foundry Company* v. *Smock* (1911), 48 Ind. App. 359, 91 N. E. 749, 93 N. E. 78, the facts were as stated by appellee that "a corporation was trying to take advantage of a settlement negotiated by its agent and at the same time denied that said agent had authority to make a settlement which was binding upon the corporation." The language of the court was applicable to that situation.

It is further urged by appellant that his rights in the real estate herein ordered sold are superior to those of the trustee because of application of the rule stated in *Bryson* v. *Hicks* (1922), 78 Ind. App. 111, 134 N. E. 874, that where an estate is created in favor of a devisee by clear and express terms, it cannot be cut down by any subsequent provision not equally clear. But the devise here in the first instance was not to appellant but to the trustee with power to sell all of the trust estate and use all the proceeds if necessary for the widow's annuity of $5,000. There is no suggestion in the will even that unpaid installments thereof were to lapse at her death. When she had been paid in full, then if the real estate remained, appellant was to take and hold in fee simple.

Appellant says that "when properly construed, the will and codicils . . . conferred no power on the trustees to sell, except for reinvestment purposes, the remainder interest in the real estate which had been specifically devised to Fred Dick." We do not think our opinion would be clarified by an analysis of the cases cited on this point, among them *Conron* v.

*Conron,* 7 H. C. L. 168; *Duncan* v. *Wallace* (1888), 114 Ind. 169, 16 N. E. 137; and *Davidson* v. *Coon* (1890), 125 Ind. 497, 25 N. E. 601. These cases doubtless were correctly decided on their facts. The last case cited recognizes the rule contended for by appellant but does not apply it to the will under discussion. It is no more applicable here. Rules of construction are not necessary where, as here, the intent of the testator is apparent.

Without further discussion we think it clear beyond a doubt that Julius Dick intended that any interest of appellant should be subservient to the right of the trustee to sell this real estate to pay the full sum due the widow at the time of her death.

Finding no error in the record, the judgment is affirmed.

Roll, J., dissents.

NOTE.—Reported in 31 N. E. (2d) 1009.

### DISSENTING OPINION

ROLL, J.—I am unable to agree with the conclusion reached in the majority opinion. I base my conclusion upon the following reasons:

In the first place it seems perfectly clear from the will itself that the testator made all the provisions in his will for the widow that he intended her' to have. In other words it was not intended by the testator that the widow should have the benefit of the provisions made for her under the will and also be allowed an additional amount as a statutory allowance. This seems to have been the conclusion reached by the trial court, and also by the majority opinion as I understand it. The court in the order entered in the probate court of California evidently was of the same conviction when

he entered the order on November 19, 1931, for in the order itself he allowed the widow the sum of $5,000 per year, payable monthly from the funds of said estate, and specifically provided that the provisions made by said order should be in lieu of the provisions in subdivision 3, paragraph 7, in the second codicil of the will.

The trial court and the majority opinion of this court in effect conceded that the widow was not entitled to the benefit of the court order and also the provisions made in the will. If she were not entitled to both, then it necessarily follows that she was entitled to one only. Which one was she entitled to? Surely she could not switch from one to the other as and when she might so decide. If she could decide to accept the provision of the court order for a month or so, and then decide, that it would be to her interest to take under the provisions of the will, and ignore the court order and take under the will, by what reasoning could it be said that she could not again drop the provisions of the will and insist upon the court order being enforced? To ask the question is to answer it. The court order remained unrevoked and unmodified during the remainder of the lifetime of the widow. There was no legal reason advanced or attempted to be advanced by appellees as to why the provisions of the court order could not have been enforced at any time before the widow's death, by her or by her personal representative after her death. The order at all times was in full force and effect and binding upon the executor. It might be said that the only practical reason why the court order was not fully carried out by the executrix was because there was insufficient funds in the hands of the executor to pay the court order. It was quite true that the real estate situated in the State of Indiana could not be sold

to make assets to pay the court order. She had to look to the property situated within that state to satisfy the order.

It seems to me that it is a reasonable deduction to make from the facts herein presented, that when the executrix discovered that the property situated within the State of California was insufficient to pay the court order and that the real estate in Indiana was not availing for that purpose, she then decided to claim under the provisions of the will and seek to enforce the provisions of subdivision 3, paragraph 7, of the second codicil of the will. It is my judgment the law does not permit her to do this. The court order was entered at her request. It remained unrevoked during the remainder of her lifetime. She accepted benefits thereunder, and the order provided that the order herein made should be in lieu of the provisions made in the will. When she secured this order and accepted benefits thereunder, she thereby surrendered her right to the benefits set out in this item of the will. Appellees nowhere in their brief, nor does the majority opinion, point out any legal reason why the amount unpaid according to the terms of the court order could not be enforced and recovered should it develop that there were sufficient assets within the State of California to pay the same. In which event the widow would receive the benefit of both the court order and the provisions of the will.

I am unable to agree with the majority opinion on another ground. This second reason for disagreement is based upon the proposition that where a testator makes a specific devise of realty followed by pecuniary bequests which are made a charge on all real and personal estate, or even on "all his real and personal property" which is succeeded by a residuary clause, the

real estate specifically devised is not charged with the payment of the bequest. My position on this phase of the case is, I think, clearly set out and discussed in the following cases: *Spong* v. *Spong*, 1 Y. and J. 300; *Conron* v. *Conron*, 7 H. L. C. 168; *Phillips* v. *Clark* (1894), 29 A. (R. I.) 688, and cases therein cited.

The mere fact that the estate here in question passed into the hands of a trustee instead of an executor or an administrator is of no deciding influence. That fact is only the machinery selected by the testator by which the provisions of the will should be carried out.

In my judgment the judgment of the trial court should be reversed.

NOTE.—Reported in 32 N. E. (2d) 698.