FLOYD v. FLOYD.

1. Testator (who died in 1884) devised the house in which he then resided and 150 acres of land adjacent, to his widow and son, by the 2nd item of his will, and by the 3rd item, the remainder of his home place to other issue. *Held,* that both of these items created specific devises which were liable to contribute *pro rata* to the payment of debts that could not be paid out of other property.

2. Where two devises are specific, one cannot be construed more specific than the other, so as to relieve it from contributing to the payment of debts for which the other is held liable.

3. Since the act of 1858 (12 *Stat.,* 700), land acquired since the making of the will and passing under a residuary clause, is not a specific devise; but where the land is then owned by testator and is referred to and designated in the will, the devise of such land is still specific, notwithstanding the act of 1858.

Before WALLACE, J., Newberry, February, 1888.

This was an action in the Probate Court by John Y. Floyd, executor of James B. Floyd, deceased, against the legatees and devisees of his testator, involving, among other things, the construction of the will of said James B. Floyd, who died April 23, 1884. The Circuit decree was as follows:

This action was brought in the Probate Court for Newberry

County for the settlement and marshalling the assets of the plaintiff's testator.   Upon the hearing before the Probate Court the question arose as to whether the land devised in the second clause of testator's will to his widow and youngest son, James Barney Floyd, should contribute ratably in regard to value towards the payment of debts, along with that devised in the third clause. The probate judge held that the land devised in the second clause should so contribute, and the question is brought here by appeal in behalf of the infant devisee, James Barney Floyd. The widow answered in the cause below, electing to take dower, but died before it was set apart, before the hearing in the Probate Court.

It is surprising that this precise question has not been decided before in this State, because wills of this description are not unusual.   The guiding rule in the construction of a will is to ascertain the intention of the testator.   In the consideration we are not primarily to consider the legal effect of what he did intend, but the primary controlling rule is to ascertain what he meant when he signed his will.   Sometimes when he uses words to which the law has attributed a technical signification, then he is supposed to be held conclusively to have intended to use those terms in the sense that the law had given to them.   The rule in Shelley's case illustrates this principle.

What was the intention of the testator, now, in this will? Suppose he had said in this second clause that, I devise all the land on which I live to my wife and her children. There is no doubt about that; it is obvious that he would have meant that the land should be divided amongst them equally. Instead of that, however, in giving this property to these same devisees, he says : "Here is a particular part of this property that I give to certain named persons.   The dwelling house, adjacent buildings, and 150 acres of land I devise to my wife and my youngest son. The remainder of my property, of this land, is to be equally divided among my other surviving children." He does not designate what child is to have what particular part, but that is to be a matter of subsequent arrangement.   Now, upon that state of facts, I think it is plain that he certainly intended that, no matter what else interfered, his wife and youngest son were to have the dwelling house and 150 acres of land.   That was his

leading and primary object in the distribution of that parcel of land; that his wife and child have that part, no matter what other part fell to any other child he might have.

It is argued by counsel, "All devises of land in this State are specific." It is possible that we may hold by that rule—if it is not a solecism in language—that one devise may be more specific than another devise, as is obviously the case here. Now, he devised all his land, all that tract of land, to his wife and children. But he says, "Here is a particularly designated plat that I devise to a particular one or two of these devisees; the balance to all in common, to be divided among them equally." There can be no question but that in its nature and essence the devise of the house and lot is essentially a specific devise. and the other in its nature and essence, so far as that property is concerned, is a residuary devise. Now, whether or not the specific devisees are to have rights in the premises superior to those of the general devisees, is the precise question which has never been settled in this State. But, in analogy to several cases which have been settled, similar to this, the specific devisees, or those which I hold in this case to be more especially the specific devisees, must necessarily have an advantage, because they are so regarded by the testator. Their right to have that is not dependent upon any subsequent division of the land by commissioners appointed hereafter or otherwise. It is plainly the intention that they should have the land.

Now, what is the legal effect of that will thus construed with that intention thus declared? The legal effect is that the specific devisee is superior in right to a general devisee or a residuary devisee, and I must so hold in this case.

It is therefore ordered and adjudged, that the appeal of the devisee, James Barney Floyd, be sustained; that the judgment of the Probate Court be modified so as to exempt the land devised to James Barney Floyd, in the second clause of the will, from contribution towards the payment of the testator's debts, until the other property and assets of the testator are exhausted, and that the cause be remanded to the Probate Court for Newberry County for such further proceedings as may be necessary to carry said judgment so modified into effect.

John Y. Floyd, as executor and in his own right, and the other parties defendant (some of them minors), interested under the will of James B. Floyd, other than the minor defendant, James Barney, appealed on the following grounds :

1st. Because his honor, Judge Wallace, erred in holding that the devises under the will, other than that to James Barney, were general or residuary devises.

2nd. Because his honor erred in holding that in its nature and essence the devise of the house and lot is essentially a specific devise, and the other in its nature and essence, so far as that property is concerned, is a residuary devise.

3rd. Because his honor erred in holding that the plain intention of the testator was, that no matter what else interfered, his wife and youngest son were to have the dwelling house and 150 acres of land.

4th. Because his honor erred in holding that one devise may be more specific than another.

5th. Because his honor erred in holding that a specific devise is superior in right to a general devise or a residuary devise.

6th. Because his honor erred in exempting the devise to James Barney from contribution towards the debts of the testator.

7th. Because his honor erred in not sustaining the decree of the Probate Court.

*Mr. James K. P. Goggans*, for appellants.

*Mr. Geo. S. Mower*, contra.

July 2, 1888.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   This case involves the construction of the will of James B. Floyd, late of Newberry County, and the precise question presented is, whether certain portions of the real estate of the testator, devised in the third clause of the will, shall be held chargeable for debts prior to another portion devised in the second clause.   In other words, whether both devises are specific and therefore liable for the debts *pro rata*, or whether the latter devise is general and therefore first liable—the first devise being admitted to be specific.   The two clauses in question are as follows :

2nd clause. "I will to my wife, Drucilla Ann Floyd, and my son, James Barney Floyd, my dwelling house in which I now reside and the out-buildings, and (150) one hundred and fifty acres of land around the same, to be laid off to them by commissioners appointed for that purpose, for the support and maintenance of my said wife and son for their joint lives, and after the death of my wife to become the absolute property of my said son, James Barney Floyd."

3rd clause. "The remainder of my home place, after deducting the 150 acres above mentioned, shall be divided into 5 equal parts with reference to value, and shall go as follows : one share to my son, Charles J. Floyd ; one share to my son, John Yancy Floyd ; one share to my daughter, Eula Clara Floyd ; one share to my grandchildren, the children of my deceased daughter, Mary Ann Margaret Floyd, and the other share to my grandchildren, the children of my deceased daughter, Amelia Rebecca Burton."

The probate judge, before whom the case was first heard, held that the devises in both clauses were specific, and therefore liable for the debts *pro rata*.  Upon appeal to the Circuit Court, his honor, Judge Wallace, reversed the ruling of the Probate Court, and ordered that said decree be modified so as to exempt the land devised in the 2nd clause of the will from contribution towards payment of the debts, until the other property and assets of testator were exhausted. ' All the other assets of the estate, including the proceeds of a certain tract of land, directed in the 1st clause to be sold for payment of debts, had been exhausted, so that the controversy is over the lands devised in the two clauses of the will above.

Before the passage of the act of 1858 (12 *Stat.*, 700), inasmuch as subsequently acquired lands did not pass under the will, all devises of real estate in possession were held to be specific, because being in the possession of the testator, identified, and usually marked and described by names and boundaries, such devises had all the indicia of specific devises.  The act of 1858, however, making subsequently acquired real estate pass under the will, has been urged as making a change in the law in the matter of devises of lands in residuary clauses of wills, so that since said act such devises should be held general and not spe-

cific, as formerly, thereby subjecting them to contribution for the payment of debts, in advance of other lands devised specifically.

It seems in England, where the rule on this subject was originally as in this country before the act of 1858, that since Statute I. Vict., c. 26 (an act similar to our act of 1858), the doctrine fluctuated, but finally, as stated in *Jarman on Wills* (3 vol., page 451, note), the old rule was regarded as unchanged, and a devise of real estate has been still held to be a specific devise, even in residuary clauses. In this State we have no decision directly on the point. The intimation in *Laurens* v. *Read* (14 Rich. Eq., 256), was outside of the case, nor was the precise question passed upon in *Moore* v. *Davidson*, 22 S. C., 101. In fact, in this last case, the question of the effect of the act of 1858 was passed over as not involved. Judge Hudson, however, in the Circuit decree in that case, expressed a very decided opinion that the act of 1858 had not changed the old rule.

The theory why lands devised in the possession of the testator were held to be specific devises, was because they were in existence and referred to and designated in the will, and we can see no reason why, as to such lands, the act of 1858 should have any effect; but as to lands subsequently acquired, there being no special reference made thereto in the will, no description as to location, quantity, or otherwise, and devised simply by virtue of a general residuary clause in the will, which, by operation of the act of 1858, is made to extend to such lands, we can see no reason why they should be regarded as specific. We think the act of 1858 simply brings such lands under the residuary clause of the will, which clause, for the reason stated above, becomes a general devise; but as to lands previously acquired, and devised by special reference thereto, what foundation is there for saying that the old rule has been changed? If, under the law as it stood before the act of 1858, such a devise was specific, why should it not be so since the act?

In the case before the court, the land in which the defendants were given shares, is as much described and identified as that given to the widow and son, James Barney Floyd. The shares of all of the parties come out of the same tract referred to as the

"home place"—the widow and son James to take the dwelling house and outbuildings with one hundred and fifty acres around the same, to be laid off, &c., and then the remainder of said home place, after deducting the said 150 acres, to be divided into five equal parts for the children. If the devise to the widow and son is specific, why not also that to the children?

The argument of the Circuit Judge is, that it was evidently the intention of the testator that his widow and son James should have a particular portion of the home place, pointed out as the dwelling house, out-buildings, and 150 acres around, and, if possible, this was more specific than the other devises, even admitting that they were specific also; and that such being the intention, it should be carried out. This is a strong view. But the law makes no distinction between specific devises as to their liability to contribute to the payment of debts. They all stand upon the same platform, and if made liable at all, they must contribute *pro rata*, and such must be supposed to have been the intention of the testator when he gave to the devises the character of specific.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that this judgment be certified to the Probate Court for Newberry County, so that the cause may be determined and settled in accordance with the principles hereinabove.