HAWAIIAN TRUST COMPANY, LIMITED, EXECU-
TOR OF THE WILL OF HARRIET EMILY
WIGHT, DECEASED, AND HAWAIIAN TRUST
COMPANY, LIMITED, TRUSTEE UNDER THE
WILL OF HARRIET EMILY WIGHT, DE-
CEASED *v.* ELLWOOD C. WILDER, JR. AND
WILDER WIGHT, AND EDNA G. CHAMBERLIN,
HARRY UEMURA, YURIKO UYEMURA, ELIZA-
BETH LOW LUCAS, LITA GUNN HORTON,
ROBERT GUNN, LESLIE HURUM, ELLA STE-
PHENS, SAMUEL G. WIGHT, HARRIET M. UYE-
MURA, ALICE I. UYEMURA, ELLEN UEMURA,
ANN UEMURA, EDNA UEMURA, ELLA UEMU-
RA, KATHLEEN UYEMURA, FLORENCE W.
BLAKE, HAWAIIAN HUMANE SOCIETY, A HA-
WAII ELEEMOSYNARY CORPORATION, DAUGH-
TERS OF HAWAII, A HAWAII ELEEMOSYNARY
CORPORATION, THE HUI MANU, AN UNINCOR-
PORATED ASSOCIATION, CHARLES HORTON,
EVELYN UYEMURA, ELLEN LITA WIGHT, MA-
SAO FUKUSHIMA, DIANE WILDER SHERRY,
ELIZABETH SHERRY, MILLIE F. RAWLINS,
LAURA MILDRED WIGHT, ELIZABETH ALLEN
WIGHT, MELINDA LANI WIGHT, LITA THOMP-
SON AND LAURA LOW LUCAS.

No. 4177.

APRIL 2, 1963.

TSUKIYAMA, C.J., WIRTZ, LEWIS AND MIZUHA, JJ.,
AND CIRCUIT JUDGE DYER, IN PLACE OF
CASSIDY, J., DISQUALIFIED.

OPINION BY MIZUHA, J., IN WHICH TSUKIYAMA, C.J., JOINS.

Harriet Emily Wight died in 1958 leaving a will disposing of her entire estate (see appended note). The property bequeathed and devised in the disputed residuary clauses of her will consists of: personal property, $233,358.07,[1] and real property, $443,000.00,[2] but the debts, administration expenses and taxes to be paid by the estate are estimated by the executor to amount to $251,700.00. General legacies amount to $31,500.00. The approximate deficiency in the residuary personalty to pay debts, administration expenses and taxes amounts to $18,341.00, plus $31,500.00 to pay general legacies, or a total of $49,841.00.

The executor brought the proceeding in the lower court for instructions as to which of the testamentary gifts were to be charged with the payment of the debts, administration expenses and taxes in the event of a deficiency, and as to the order in which the testamentary gifts should be abated.

---

[1] Value of securities sold plus estimated value of unsold securities, dividends and cash on hand.

[2] Total value of 71.639 acres of real estate owned by testatrix appraised at $500,000.00, approximately $7,000.00 an acre. There are approximately 63.472 acres involved under the disputed real property residuary clause.

The lower court found that the debts, administration expenses and taxes should be paid out first from the residuary personal property in Article 6 and then from the residuary real property in Article 7, and that the gift of the residuary real property in Article 7 should be charged for the payment of general legacies.

Two of the remaindermen, Ellwood C. Wilder, Jr., and Wilder Wight have appealed contending that the trial court erred in defining the gift of real property in trust in Article 7 as a residuary gift, and in failing to rule that it was a specific devise, or in any event, in failing to find that the real property should be resorted to in abatement only after the exhaustion of all gifts of personal property.

The questions presented are as follows:

1. Is the gift of real property in trust made by Article 7 of decedent's will a residuary devise as ruled by the lower court or a specific devise?

2. If the gift of real property in trust made by Article 7 is a residuary devise, is it charged by Article 1 of decedent's will for the payment of all debts, funeral expenses, administration expenses and all estate and inheritance taxes?

3. If the gift of real property in trust made by Article 7 is a residuary devise, are general legacies payable out of the proceeds of residuary realty after the exhaustion of residuary personal property?

By Article 7,[3] testatrix devised, along with $25,000.00 in cash and/or securities, "all of the rest, residue and remainder of my real property, including all lands and improvements thereon, and all rights, privileges and ease-

---

[3] Article 7 is here mentioned before Article 6 for the reason that by an apparent error in enumeration, the will in question contains two Article 6's and two Article 7's. Unless otherwise expressly stated, the Article 7 and Article 6 here discussed will have reference to the first Article 7 and the second Article 6 in the order in which they respectively appear in the will.

ments appertaining thereto, to HAWAIIAN TRUST COMPANY, LIMITED, * * * in trust * * *."[4]

Article 6 of decedent's will reads as follows:

"I give, devise and bequeath the rest, residue and remainder of my property, wherever situated and of whatever nature, absolutely, as follows: * * *"

No question is raised as to Article 6 and its status as a residuary clause is undisputed. However, the appellants contend that Article 7 is not a residuary devise of real property. They argue that it is a specific gift of the balance of the testatrix's Nuuanu real property, urging in main the following reasons: (1) that the testatrix had owned only one piece of land, the Nuuanu property, for the period of approximately twenty-six years preceding her death; (2) that just one year prior to making her will, the testatrix had registered the title to her Nuuanu property in the Land Court of Hawaii; (3) that numerous provisions of Article 7 could not possibly have had application to any real property other than the Nuuanu property; and (4) that the testatrix had constantly referred in her will to the land devised by Article 7 as "my real property."

The lower court held the gift in Article 7 to be a residuary devise of real property stating as follows:

"* * * In the first place, the decedent described the property in general terms. In the second place, after

---

[4] Article 7 is in its entirety a trust arrangement providing, among other things: (1) the testatrix's principal purpose and desire with respect to such trust; (2) direction that her servants be permitted to occupy portions of her real property free of rent after her demise during the term of the trust; (3) the trustee's power to sell or otherwise dispose of her real property; (4) the trustee's power to accumulate net income; (5) the duration of the trust; (6) the beneficiaries of the trust; (7) the trustee's full power and authortiy to manage and control the trust estate; (8) the trustee's power to participate in transactions affecting any form of security forming part of the trust estate; (9) the trustee's power to distribute the trust estate at the termination thereof "wholly in kind or wholly in money, or partly in kind and partly in money" in their sole discretion; and (10) waiver of the trustee's bond.

the decedent had executed her will which contained the gift of the residue of her real property, she executed two codicils in which she carved two specific gifts of real property out of the residue of her real property. Furthermore, the decedent did not intend that the real property passing under Article SEVENTH go to the particular individuals since she directed that the trustee sell the remaining property and distribute the proceeds among certain named persons. Finally, these named persons who were to receive the proceeds from the remainder of the real property were the same persons who were to receive the ultimate remainder of her other property under Article SIXTH. All of these considerations lead the Court to conclude that the gift of the residue of decedent's real property under Article SEVENTH, was not specific, but was a general, residuary gift."

A will may sometimes contain several residuary clauses. 4 Page, *Wills*, § 33.60; *Moffett* v. *Elmendorf*, 152 N.Y. 475, 46 N.E. 845; *Equitable Trust Co.* v. *Delaware Trust Co.*, 30 Del. Ch. 348, 61 A.2d 529; *Salem Nat'l Bank & Trust Co.* v. *Harkins*, 140 N.J. Eq. 82, 53 A.2d 373. See also *Downs* v. *Casperson*, 20 Del. Ch. 119, 171 Atl. 753.

In *Moffett* v. *Elmendorf, supra,* the court found three residuary clauses, one for personalty, one for realty not otherwise disposed of, subject to certain conditions, and one for realty in general.

In *Equitable Trust Co.* v. *Delaware Trust Co., supra* at 533, the testatrix specifically provided:

" 'Item VII. * * * I give and bequeath * * * and all other personal property at "Dunleith" or elsewhere, * * *.

    *     *     *     *     *     *     *     *

" 'Item IX. All other real estate of which I die seized and all other real estate over which I have any

power of appointment, I give and devise * * *.

\* \* \* \* \* \* \* \*

" 'Item XII. All the rest, residue and remainder of my estate, whether real, personal or mixed and which I may now or hereafter acquire, and all other property of any character with respect to which I may have a power of appointment at the time of my death, I give, devise and bequeath * * *.' "

The Delaware court rejected the contention that Items VII and IX merely provided for specific gifts and held them to be residuary clauses. It further stated:

"* * * The gift of the enumerated kinds of property in that Item [VII] may be specific, but the additional gift of 'all other personal property at "Dunleith" or elsewhere' is a residuary gift. It covers all tangible personal property belonging to the testatrix as well as that over which she had a testamentary power of appointment, no matter where located. * * *

\* \* \* \* \* \* \* \*

"The devise of 'all other real estate' * * * in Item IX is likewise a particular residuary devise and includes all real property not otherwise disposed of, as well as all interests in real property ineffectively given or appointed by other items of the will and the codicil. * * *

\* \* \* \* \* \* \* \*

"The general residuary clause (Item XII) is, however, applicable to any other personal property, not of a tangible nature, belonging to the testatrix and that over which she had a testamentary power of appointment, including the ineffective gift of $25,000, that may be left after the payment of debts, expenses, taxes and legacies." *Equitable Trust Co.* v. *Delaware Trust Co., supra* at 541.

That which is to be sought in the instant case is the

intention of the testatrix as expressed in the will. 95 C.J.S., *Wills,* § 590; *In re Campbell's Estate,* 33 Haw. 799; *In re Foster's Estate,* 33 Haw. 666; *Kinney* v. *Robinson,* 30 Haw. 246.

In paragraph (a) of Article 7, testatrix stated:

"(a) My principal purpose in creating this trust is to provide an ample period for my present tenants to find other places of abode. It is also my desire that my real property be sold by my Trustee, to the extent feasible, so that the beneficiaries of my estate shall receive property in sole ownership rather than undivided interests in my real property. I direct that the provisions of this Will shall be liberally construed to accomplish this purpose and desire."

By Article 7, if the testatrix acquired additional land during her lifetime by way of inheritance, gift, purchase or otherwise, it clearly would have constituted part of the rest, residue and remainder of her real property. Furthermore, certain of the specific devisees and one of the ultimate devisees were to take only on condition of surviving the testatrix. Clearly, any lapsed devises of real property would pass under Article 7 of the will for it would be part of "all the rest, residue and remainder" of the real property. See *Spencer* v. *Bishop,* 31 Haw. 259; *Paiko* v. *Boeynaems,* 22 Haw. 233. The language indicates that the testatrix thought of the rest, residue and remainder of her real property not as real property in its physical form but something that could be converted into cash and form a part of her residuary estate. She further did not contemplate ultimate beneficiaries in Article 7 to receive undivided interests in residuary real property but only the proceeds from same. Ultimate beneficiaries who were to receive the proceeds from the sale of the remainder of the real property under Article 7 were the same persons named as ultimate beneficiaries of the remainder of her

personal property under Article 6. A combination of all the foregoing elements considered as a whole clearly indicates that the testatrix did not intend Article 7 to be a specific devise of real property. See *In re Noholoa's Estate*, 18 Haw. 265, *affirmed Gray* v. *Noholoa*, 214 U.S. 108.

We are unable to find any language in the will which shows that the testatrix used the phrase "rest, residue and remainder of my real property" in any other than its usual and technical sense to describe the gift in Article 7. *Kinney* v. *Oahu Sugar Co.*, 23 Haw. 747, *affirmed* 255 Fed. 732 (9th Cir. 1919), *cert. denied* 249 U.S. 616. In this connection, it is to be noted that, where the phrase "the residue of my estate" was used, this court, in *Estate of Rowat*, 31 Haw. 92, acknowledged the technical connotation ordinarily attributed to the word "residue" as used in a will, when it said at page 94:

"* * * Attributing to the word its ordinary meaning, the 'residue' of his estate can only be that which is left after satisfying the provisions of the preceding five specific legacies.[5] The residue means what is left, not only after setting aside the furniture, the automobile and the personal effects for the widow, but also after setting aside the four gifts of $500 each to certain of his children. * * *"

In *Rowat, supra,* the question was whether, since there was no residuary personal property out of which the general legacies could be paid, the same should be paid out of the residuary realty. This court held at pages 96-97:

"* * * Under these circumstances the four specific legacies are payable out of the proceeds of the real estate not, strictly speaking, because the testator made them a charge upon the realty, but because, to the extent that the realty was necessary to provide the means

---

[5] Although this court referred to the five gifts as specific legacies, the four cash gifts of $500.00 each were general legacies.

for the payment of the four legacies, to that extent the realty was not by the residuary clause devised to the residuary beneficiaries."

This court also quoted with approval the following from *Greville* v. *Browne*, 7 H.L. Cas. 689 (11 Eng. Reprint, 275, 278, 279) at page 95:

" 'For nearly a century and a half this rule has been laid down and acted upon, that if there is a general gift of legacies, and then the testator gives the rest and residue of his property, real and personal, the legacies are to come out of the realty. It is considered that the whole is one mass; that part of that mass is represented by legacies, and that what is afterwards given, is given minus what has been before given, and therefore given subject to the prior gift.' * * *"

The testatrix expressed in clear language by Article 1 of her will as follows: "I direct my executor hereinafter named, to pay all my just debts, funeral and administration expenses and also to pay out of my residuary estate, all estate, inheritance, succession and transfer taxes * * *." This language which is unambiguous is binding on the court and we cannot rewrite the will of the testatrix nor vary its provisions. Where the intention of the testatrix as expressed in her will is manifest her intention must control, unless it be contrary to some rule of law or public policy. *In re Campbell's Estate, supra; In re Foster's Estate, supra; Kinney* v. *Robinson, supra.*

The testatrix, in charging the residuary estate under Article 1 with the payment of all debts, administration expenses and taxes, indicated clearly her intention that residuary real property and personal property were to pay her debts, administration expenses and taxes. However, she did not indicate whether residuary personal property and residuary real property should be charged equally or whether one should take precedence over the other.

The function of the court is to ascertain, if possible, the intent of the testatrix as she has expressed it in the will, and when there is "uncertainty or incompleteness of expression in the will, to accept the aid of evidence of surrounding circumstances which will place the court as near as may be in the position of the testator as of the time he made the will. * * *" *Mercer* v. *Kirkpatrick*, 22 Haw. 644, 647. The surrounding circumstances include the state of the law at the time of the execution of the will and the testator must be presumed to have acted with knowledge of applicable statutory provisions and rules of law.

Under the provisions of R.L.H. 1955, § 317-27 (Supp. 1961),[6] unless a contrary direction is expressed in the will, residuary personal property must first be exhausted for the payment of debts, administration expenses and taxes before residuary real property. Throughout its long

---

[6] R.L.H. 1955, § 317-27 (Supp. 1961), reads as follows:

"§ *317-27. Real estate; sale.* The real property of a decedent shall be subject to sale by the administrator or by the executor unless power to sell is given by the will, only when authorized by the court. The court may authorize such sale for payment of expenses of administration, family allowance, estate and inheritance taxes or debts, or whenever such sale appears to the court to be for the best interests of the estate and not inconsistent with the will, whether or not the personal property of the estate has been exhausted. In every such case of a sale of real property and payment of part or all of the proceeds for any of the aforesaid purposes the residue of the proceeds, if any, shall be considered as real property and, together with any available personal property of the estate, equal, so far as the same is sufficient, in inventoried value to the amount of the proceeds so expended in the payment, shall be distributed among the same persons and in the same proportions as the real property would have been if it had not been sold, so that the values of the portions of the estate received by the persons entitled to share therein shall, as nearly as possible, amount to the same as if personal instead of real property had been sold. In every such case of sale of real property without payment of any part of the proceeds for any of the aforesaid purposes, the proceeds shall be considered as real property and shall be distributed among the same persons and in the same proportions as the real property would have been if it had not been sold. For the purposes of this section, real property includes a leasehold interest in real property with an unexpired term of ten years or longer or a leasehold interest in real property together with an option to purchase the leased premises or some part thereof."

legislative history,[7] this section recognized the continued application in Hawaii of the common law rule that the residuary personal property of the decedent must be first used for the payment of debts, and that resort may be had to residuary realty for such purposes only when the residuary personal estate is exhausted.

In the instant case, it is not necessary to reach the question as to the order of abatement of all the gifts in the will inasmuch as the residuary realty amounting to approximately $443,000.00 is sufficient to pay the remainder of debts, administration expenses and taxes and all the general legacies. The rule of the *Rowat* case, *supra*, is in accord with the principle that the intention of the testatrix as exhibited by the will must control. Most of the general bequests, in the amount of $31,500.00, were in small amounts signifying tokens of appreciation and remembrances. It is more reasonable to assume the testatrix, instead of wiping out her several general bequests completely in the event of insufficiency, intended that such bequests should be met from her residuary real property in the event her residuary personal property was insufficient to pay same. Any other construction would attribute to the testatrix an intention that her numerous gifts were made merely as an outward show and not in reality. Such a hollow and empty gesture should not be imputed to the testatrix. *Cf., Dunken* v. *Wallace,* 114 Ind. 169, 16 N.E. 137; *Hoyt* v. *Hoyt,* 85 N.Y. 142.

---

[7] The case of *Estate of Kamaipiialii,* 19 Haw. 163, involved unnecessary legal expenses. and this court's express disapproval of an attempted sale of the real estate of minors to pay them. It also held that an order for the sale of realty to pay debts is properly vacated, when, among other things, it appears that there was no showing that the personalty had proved insufficient under the original version of section 317-27. It also construed the statute to mean that under that statute, realty could not be sold to pay expenses of administration, but only available to pay the debts of the decedent. This last mentioned holding resulted in a legislative amendment of the statute in 1929, whereby "payment of expenses of administration, family allowance, and inheritance taxes" was permitted. S.L.H. 1929, c. 45, § 1.

Therefore, we reaffirm the rule in the *Estate of Rowat* case, *supra,* that when a testatrix, after providing in her will for pecuniary general legacies, disposes of "the rest, residue and remainder" of her property by residuary clauses, and residuary personalty is insufficient, general legacies are payable out of the proceeds of residuary real property, because, to the extent that residuary realty is necessary to provide the means for the payment of general legacies, to that extent realty is not devised by the residuary clause to the residuary beneficiaries.

Affirmed.

Circuit Judge Dyer concurs in the result.

*Clinton R. Ashford* (*Stephenson, Ashford & Wriston* on the briefs) for Ellwood C. Wilder, Jr., defendant-appellant.

*George M. Koga* (also on the briefs) for Harry Uemura and Yuriko Uyemura, defendants-appellees.

*Eichi Oki* (*Charles M. Hite* with him on the briefs) for Daughters of Hawaii, defendant-appellee.

*James S. Campbell* (*Smith, Wild, Beebe & Cades* with him on the brief) for Hawaiian Humane Society, defendant-appellee.

*Wilder Wight* filed briefs for himself but was deceased at time of argument.

*Richard E. Stifel* (*Anderson, Wrenn & Jenks* on the brief) for plaintiffs-appellees and Edna G. Chamberlin, defendant-appellee.

*John F. Alexander,* Guardian Ad Litem for Alice I. Uyemura, Ann Uemura, Edna Uemura, Ella Uemura, Kathleen Uyemura, Lita Thompson, Ellen Lita Wight, Elizabeth Allen Wight, Laura Mildred Wight and Melinda Lani Wight, defendants-appellees. (Filed no brief and did not appear to argue.)

*Allen M. Stack* (*Pratt & Tavares*) for Elizabeth Low Lucas, defendant-appellee. (Filed no brief and did not appear to argue.)

*Edward N. Sylva* for Millie F. Rawlins, Executrix of the Will of Wilder Wight, deceased, defendant-appellant.

NOTE
(Appended to opinion of Mizuha, J.)

"FIRST: I direct my Executor hereinafter named to pay all my just debts and funeral and administration expenses and also to pay out of my residuary estate all estate, inheritance, succession and transfer taxes imposed by the United States or any state, territory or possession thereof on my estate and on all devises and bequests given hereby or by any codicil hereto, including all such taxes imposed by reason of my death, although measured by property, including insurance proceeds, not subject to the possession or control of my Executor. My Executor shall not seek to recover any such tax or any part thereof from any person receiving property by which the tax is measured.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"SEVENTH: I give, devise and bequeath the sum of Twenty-five Thousand Dollars ($25,000.) in cash or securities, or partly in cash and partly in securities, such securities to be selected by my Executor and to be valued for this purpose in accordance with the values determined by appraisal in the probate administration of my estate, and all of the rest, residue and remainder of my real property, including all lands and improvements thereon, and all rights, privileges and easements appertaining thereto, to HAWAIIAN TRUST COMPANY, LIMITED, a Hawaiian corporation having its principal office in Honolulu, to have and to hold the same to it and its successors in trust upon the following trusts:

"(a) My principal purpose in creating this trust is to provide an ample period for my present tenants to find other places of abode. It is also my desire that my

real property be sold by my Trustee, to the extent feasible, so that the beneficiaries of my estate shall receive property in sole ownership rather than undivided interests in my real property. I direct that the provisions of this Will shall be liberally construed to accomplish this purpose and desire.

"(b) My Trustee shall permit all of the persons who at the time of my death, as my tenants, shall be occupying or using portions of the real property devised to my Trustee to continue to occupy or use portions of my real property upon the same rental and subject to the same terms and conditions as shall be subsisting at the time of my death. My faithful servants, HARRY UEMURA and YURIKO UYEMURA, have been occupying and using portions of my real property without rent, and I direct that they shall be permitted to continue such occupancy and use, free of rent and without impeachment for waste, during the term of this trust. The determination of my Trustee with respect to the lands occupied or used by any of my said tenants and said servants, and with respect to the rent and other terms and conditions of such occupancy or use, shall be binding and conclusive upon all persons interested in the trust estate created hereby. In the event that my Trustee shall deem it desirable to do so for the purpose of facilitating the sale or subdivision of said lands, my Trustee may give to any of my said tenants and servants occupancy in other portions of said lands, in substitution for the benefits herein provided, upon such terms and conditions as my Trustee in its discretion shall deem equally beneficial. My Trustee shall be empowered to sell or otherwise dispose of my said real property, in exercise of the powers hereinafter conferred upon my Trustee, upon making such arrangements as it shall determine will assure to my said tenants and said servants continued occupancy or use of said portions of my real property in

accordance with my intention herein expressed, and the determination of my Trustee with respect to any such arrangements shall be binding and conclusive upon all persons interested in said trust estate, including my said tenants and servants. My said tenants and servants shall not be entitled to assert against any purchaser any rights of occupancy or use provided in this Will, except such as may be provided through arrangements made by my Trustee upon such sale, and no purchaser from my Trustee shall be bound to inquire into the validity, expediency or propriety of any such sale or of the arrangements made by my Trustee with respect to the continued occupancy or use of such property by my said tenants and servants. The rights and privileges conferred upon my said tenants and servants shall in each case be deemed personal, and shall not be subject to claims of their creditors or others, nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered.

\*  \*  \*  \*  \*  \*  \*  \*  \*

"(d)  This trust shall terminate upon the expiration of the period of five years following the date of my death, and upon such termination my Trustee shall transfer, convey and deliver, absolutely and free from any trust, all of the principal of the trust estate as follows:

\*  \*  \*  \*  \*  \*  \*  \*  \*

"SIXTH: I give, devise and bequeath the rest, residue and remainder of my property, wherever situated and of whatever nature, absolutely, as follows:

"One-half (½) thereof to my said niece, EDNA G. CHAMBERLIN, if she shall survive me, or if she shall not survive me in equal shares to those who shall survive me of her children and of the issue of any of her children who shall predecease me, such issue taking per stirpes by right of representation in each generation.

"The remaining one-half (½) thereof, or all thereof if

neither my said niece, Edna G. Chamberlin, nor any of her children or issue of her children shall survive me, as follows:

"The sum of Two Thousand Dollars ($2000.) to my brother, ELWOOD C. WILDER, if he shall survive me; * * *."

DISSENTING OPINION OF LEWIS, J., IN WHICH WIRTZ, J., JOINS.

The first point for consideration is the direction in Article First of the will that testatrix' executor pay her debts and funeral and administration expenses, and also "pay out of my residuary estate" all the estate and inheritance taxes. The court below held, and correctly so, that by "residuary estate" in this article the testatrix meant Article Sixth, appearing on pages 12-15 of her will, which provided:

"Sixth: I give, devise and bequeath the rest, residue and remainder of my property, wherever situated and of whatever nature, absolutely, as follows:

"One-half ($\frac{1}{2}$) thereof to my said niece, Edna G. Chamberlin * * *.

"The remaining one-half ($\frac{1}{2}$) thereof * * * as follows:

[There follow gifts to fifteen individuals, ranging from $100 to $2,000, totaling $9,200.]

"The remainder thereof in equal parts * * *."

[There follow gifts of four equal parts.]

Without abatement of legacies or devises additional to those set out in Article Sixth, only $201,858.07 is available for payment of debts, expenses and taxes, which at the time of the hearing totaled $251,700.

Obviously, the general cash legacies set out in Article Sixth were contingent upon there being a residue after all other directions of the will were carried out; as there

is no such residue they cannot be paid. So far, there is general agreement. There is disagreement as to which other gifts are to be abated as a result of the $50,000 deficiency. The first point of disagreement is as to the abatement of general cash legacies other than those in Article Sixth.

By an article designated "Seventh" but appearing on pages 6-12 of the will, preceding the above-quoted Article Sixth,[1] testatrix bequeathed the sum of $25,000 in cash or securities in trust, together with real property as hereinafter set out. By codicils to her will she bequeathed $6,500 in gifts to fifteen individuals and societies ranging from $100 to $1,000. So far as appears she thought that her estate was sufficient to pay these bequests without recourse to her real property. She left cash and securities valued as of the date of death at $219,593.44, including securities specifically bequeathed.[2] Had the taxes not been so large[3] the estate would have been ample to take care of the general cash legacies of $31,500 and the specific bequests of securities amounting to $39,281.25 in value, as well as the other requirements. The taxes largely were engendered by her valuable real property, nearly seventy-two acres in Nuuanu constituting in value more than two-thirds of her gross estate, and it is easy to see that she did not envision such a large amount of taxes. The last codicil was made in 1951. She died in 1958. In 1951 testatrix cannot have taken into account the increase in

[1] As stated in the main opinion, there were two articles "Sixth" and two articles "Seventh" in the will. The Article Sixth above quoted should have been designated "Eighth" and the Article which follows it under the designation "Seventh" should have been designated "Ninth," etc.

[2] The residue under Article Sixth has been computed by excluding the securities specifically bequeathed, deducting the cash legacies, and adding gains realized on the securities sold plus dividends received from residuary securities.

[3] Taxes have been estimated at $206,000 ($170,000 federal and $36,000 State).

the value of her real property between 1951 and 1958.

The court below saved the general cash legacies by holding that the devise made by Article Seventh on pages 6-12 of the will[4] was a residuary devise which the testatrix intended should "be available for the payment of debts, administration expenses and taxes first after the exhaustion of the property which decedent intended to include in her 'residuary estate' as referred to in Article First * * *." The interpretation of this Article Seventh is the principal matter before this court. Suffice it to say at this point that it placed in trust, together with the aforesaid $25,000, real property which thus is taken for debts, expenses and taxes while the gift of $25,000 in cash or securities made a part of the same trust is preserved. This is robbing Peter to pay Paul. The only cash legatees who benefit by this holding are the fifteen individuals and societies who were added by the codicils and given a total of $6,500. By the holding that there was a second residuary gift, they are preferred to the fifteen individuals named in Article Sixth of the will, whose legacies total $9,200. In my view testatrix did not intend to provide for such second residuary gift.

As has been well stated:

"* * * The courts determine the class under which a legacy is to be placed, by ascertaining the incidents which testator intended that such legacy should have, whether in case of abatement, due to a deficiency in assets, * * * or in other questions * * *; and if the court has ascertained the testator's intention in such instances, the court then places the legacy in the class to which such incidents attach it. The court does not begin by determining the class under which the legacy is to be placed; and then attaching to the legacy

---

4 This Article Seventh is set out in the appendix of the main opinion.

in question, the incidents which ultimately attach to a legacy of such class. The classification of legacies and devises is, therefore, practically a matter of convenience in expression. The rights of the parties could be determined just as well without the use of the names of these classes of legacies and devises; although it would frequently take more words to express the same idea. It is quite likely, therefore, that a somewhat different meaning is given to these different names of classes, when used in connection with different problems." 4 Page, *Wills*, § 1392 at 102 (3d ed.).

To determine the residuary character of the gift of real property made by Article Seventh, the test is the intention of the testatrix when she used there the language "all of the rest, residue and remainder of my real property * * *." As found by the court below: "The decedent owned only one parcel of real property from 1932 until the date of her death in 1958, namely, the 71.639 acres of improved real property situated in Nuuanu Valley mentioned in Finding No. 3." The evidence showed that after selling a piece of Kalama property in 1932 testatrix said "from that time on she would invest in securities." This was right after the death of her husband. From that time on she owned only the large Nuuanu piece and did not invest in any other real property. By Article Second she gave her niece a 2.59 acre piece out of this tract, and by Article Third gave her brother a 1.572 acre piece out of this tract, each described by metes and bounds. By the second codicil she carved out a 3.933 acre piece for "my faithful servant," Harry Uemura, and by her third codicil gave a .072 acre piece to "my faithful servant," Yuriko Uyemura. The question is whether by the above-quoted language "all of the rest, residue and remainder of my real property" she meant the 63.472 acres of her Nuuanu tract remaining after these specific gifts, or meant instead

such real property as might remain after taking care of debts, expenses, taxes and gifts of every character.

In my view, the former is correct. The testatrix divided her Nuuanu tract among her beneficiaries. After gifts by metes and bounds description she devised the balance of the tract. This disposition of the tract had no different effect than a gift to one beneficiary only.

Testatrix' intention is shown by her statement in Article Seventh that: "My principal purpose in creating this trust is to provide an ample period for my present tenants to find other places of abode." This purpose was elaborately carried out in the succeeding trust provisions. When interpreted in the light of the surrounding circumstances[5] Article Seventh plainly refers to testatrix' Nuuanu tract, not to real property in general.

Testatrix did not expect to leave any other real property but provided for the contingency that she might do so in the succeeding article mistakenly designated "Sixth," in which she disposed of "the rest, residue and remainder of my property wherever situated *and of whatever nature * * *,*" referred to in Article First as "my residuary estate" (emphasis added). This was so comprehensive as to include real property as well as personalty. It was a general residuary clause. Article Seventh necessarily related to specific real property not intended to fall into the general residue. In *Grise* v. *Weiss,* 213 Ind. 3, 6, 11 N.E.2d 146, 148, a somewhat similar situation was presented, and the court held that a gift of "the remaining personal property" did not dispose of all of the personal property but only specific property, which the court by reference to other provisions of the will found to be decedent's personal effects. The court applied the rule that

---

[5] As held in *Haslam* v. *Alvarez,* 70 R.I. 212, 38 A.2d 158, the surrounding circumstances may be looked to.

"where it clearly and distinctly appears that the testator did not intend to employ the terms in their technical sense, then the courts will not give them that meaning; on the contrary, they will search for and affix to the terms employed the meaning which the testator intended they should receive." *Accord, Wolf* v. *Schaeffner,* 51 Wis. 53, 8 N.W. 8.

Having arrived at the conclusion that in Article Seventh testatrix referred to the rest, residue and remainder of her Nuuanu tract, and not to her real property in general, my next point for consideration is her intention as to what was to be first taken out in determining the rest, residue and remainder. The proper approach is illustrated by *Alsop* v. *Bowers,* 76 N.C. 168, 170, in which the court said:

"* * * The reason for subjecting a residuary legacy to the payment of debts in the first instance, is, because in most wills there is an express provision for the payment of debts and until that is done, the subject of the legacy is not ascertained. The words commonly used, are 'after the payment of my debts and the legacies hereby given I bequeath the residue of my estate, &c.' Where there is no express provision to that effect, the Courts supply it by implication. As to the legacies set out in the will, the word 'residue' covers them. As to the payment of his debts the reasoning is; the testator knew that his debts had to be paid before his legacies, *ergo,* subjecting this legacy to the payment of all other legacies of necessity subjects it to the payment of his debts in the first instance. This reasoning does not apply to a specific legacy of an ascertained fund minus the payment out of it of certain sums to be paid to her grand nephews and nieces, for there is nothing to imply that it was the intention to add also 'minus the payment of my debts' an unexpected event."

In that case the will provided for the payment of certain cash legacies out of specific bonds and savings bank funds, then gave to plaintiff "the residue of said funds after paying above amounts." It was held that provision for debts should be made by abating ratably all the gifts made in this paragraph and not by assessing the whole amount against the gift to plaintiff. Her gift was deemed as specific as any other. *Accord, Van Nest's Ex'r v. Van Nest,* 43 N.J.Eq. 126, 13 Atl. 179; *Provident Trust Co. v. Graff,* 18 Del. Ch. 255, 157 Atl. 920; *In re Knickerbocker's Will,* 255 App. Div. 309, 7 N.Y.S.2d 638, *aff'd,* 280 N.Y. 560, 20 N.E.2d 15, *motion to amend remittitur denied,* 280 N.Y. 598, 20 N.E.2d 32; *Floyd v. Floyd,* 29 S.C. 102, 7 S.E. 42; *cf., Sykes v. Van Bibber,* 88 Md. 98, 41 Atl. 117, recognizing the rule but holding there were distinguishing features.

This rule has its source in *Page v. Leapingwell,* 18 Ves. 463 (Ch.). In that case the sale of a castle was directed by the will, and out of the moneys arising from the sale certain gifts were made and 'the overplus moneys' given to plaintiff. Though testator directed that the castle not be sold for less than 10,000 £ only 7200 £ was realized. The court directed that all the gifts that had been made out of the fund abate ratably, disallowing the contention that the same construction apply to the gift of the "overplus" as would apply to a general residuary clause. *Accord, Miller v. Huddlestone,* 6 Law Rep. Eq. Cas. 65.

In the present case the will is not as clear as in the above-cited cases because the Nuuanu tract is not all disposed of in one article and one must search through the will to determine what testatrix intended to be taken out before "the rest, residue, and remainder" of her Nuuanu tract was determined. However, I have no doubt that only the four devises made by metes and bounds were to be taken out. So in *Morisey v. Brown,* 144 N.C. 154, 56 S.E.

704, testator in other parts of his will gave certain specifically described lands to various devisees and then in the ninth item of his will gave to his nieces "the residue of my land in Sampson county." He made pecuniary legacies as well, and the question was whether the real estate devised by the ninth item should be sold to pay these legacies. It was contended that the ninth item was residuary but the court held otherwise. After holding that the devise was specific because of the words "in Sampson county" the court continued:

"* * * There is nothing in the will to indicate that he knew or believed that his personal estate would not be sufficient to pay the pecuniary legacies, or that he intended his land to be subjected to the payment of them. Following the well-settled rule that such intention must appear, either in express terms or by at least reasonable implication, we cannot charge the legacies upon the land. * * *"

*Accord, In re Pitman's Estate,* 182 Pa. 355, 38 Atl. 133.

It is the intention of the testatrix that governs, not the technical meaning of the words "rest, residue and remainder." So in *In re Haslett's Estate,* 190 Misc. 496, 74 N.Y.S.2d 294, involving a will which left the widow the homestead property and "one-third part of all the rest, residue and remainder of my estate and property of every name, kind and nature," it was held that the widow took her one-third without abatement for payment of either debts, etc., or general legacies left by subsequent clauses, all of which were to be paid out of "the remaining portion of said rest, residue and remainder," left in trust.

Nothing in the will in this case indicates that testatrix intended that her Nuuanu tract be subjected to the payment of debts, expenses or taxes, or to the satisfaction of legacies. To the contrary she specifically provided in Article First that the taxes be paid out of "my residuary

estate." This was the general residue disposed of by Article Sixth on pages 12-15 of the will, not "the rest, residue and remainder of my real property" disposed of by Article Seventh on pages 6-12 of the will. *United States Trust Co.* v. *Black,* 146 N.Y. 1, 40 N.E. 403, followed in *In re Title Guarantee & Trust Co.,* 127 App. Div. 118, 111 N.Y.S. 169.

In *United States Trust Co.* testatrix by the third clause of her will directed that certain houses be sold and the proceeds placed in trust. The question was as to the disposition of the remainder after the death of the life beneficiary of this trust fund. Testatrix had provided that "the principal of said trust fund shall form part of my residuary estate, and the same be disposed of as the same is hereinafter disposed of." Thus the court had to decide the meaning of "my residuary estate." Testatrix by the Seventh Clause of her will, after various specific devises, had directed that "all the rest, residue, and remainder of my estate, both real and personal" be sold and out of the proceeds cash bequests there listed be paid. By the Eighth Clause of her will she had directed that after the payment of these legacies there be paid still other legacies "out of the residue of the proceeds of sale of my residuary estate," and then continued with a direction that: "All the rest and residue of my said residuary estate not herein otherwise disposed of" be paid over to four named individuals. The court held that these four took the principal of the trust fund under the Third Clause, disallowing the contentions of the cash legatees some of whom were unpaid and without any other chance of payment. The court said:

"* * * In describing that portion of her estate which remained after the disposition which she had made of her property in the preceding clauses of her will, she speaks of it in the seventh clause as 'all the rest,

residue, and remainder' of her estate, both real and personal. By the use of such language it seems to us she did not mean that this portion of her property which she was providing should be sold and converted into cash was to be regarded as her 'residuary estate,' within the meaning of that term as used by her in the third and other clauses of her will preceding the seventh. * * * The residuary estate referred to by the testatrix in the clauses preceding the seventh is, as we think, the residuary estate which she assumes will remain after the payment of these specific legacies referred to in the seventh and eighth clauses of the will. * * * She believed that there would still be left a sum unprovided for, the disposition of which was to be made by this final provision already alluded to, and which would dispose of a true and final residuum. * * *" (pp. 405-06).

So here testatrix referred to the "true and final residuum" when she used the language "my residuary estate" in Article First. She had no expectation that it would prove insufficient. She previously used the language "the rest, residue and remainder of my real property" in reference to the balance of her Nuuanu tract without any thought that this terminology would subject the land to the payment of debts, expenses or taxes for which she had elsewhere provided, or to the payment of the general cash legacies afterward made in her codicil but nonexistent when she first used this language, the cash legacies then being confined by Article Sixth to the true residuary estate except for the $25,000 left in trust along with the real property in question. She had no thought, of course, that this terminology would subject the land to the satisfaction of specific bequests of securities or personal effects which by their very nature must be satisfied by delivery of the property bequeathed. The explanation

of this terminology is that it was used in recognition of the gifts of portions of the Nuuanu tract elsewhere made by metes and bounds.

It is contended that the gift made by Article Seventh would have increased if any of the four devises made by metes and bounds had lapsed.[6] The point is not material. In any event, the gift was at least 63.473 acres and was no more subject to abatement than any other specific gift. See 4 Page, *Wills,* § 33.63 (Bowe-Parker Rev.), where the author while disputing the principle of adding any lapsed gifts to a specific gift of this character and contending that treatment of the gift of the residue as a specific gift if there is need of abatement calls for a like treatment if there are lapsed gifts, nevertheless recognizes that the courts have not linked the two propositions together. For like reasons I deem it immaterial whether Article Seventh is properly described as a "particular residuary clause." See Page, *supra.*

*Estate of Rowat,* 31 Haw. 92, cited by appellees, has no bearing. That case merely held that the words "residue of my estate," used in a general residuary clause without distinction between personalty and realty, subjected the realty to the payment of pecuniary legacies, at least when the personalty was exhausted. Here, on the contrary, testatrix made separate disposition of all the realty she owned at the time, which she expected would be all she would own at the time of her death as proved to be the case. She did not permit any of it to fall into the general residue. She identified it by stating her purpose to take care of her tenants, and then in the general residuary

---

[6] Compare *Equitable Trust Co.* v. *Delaware Trust Co.,* 30 Del. Ch. 348, 61 A.2d 529; *Cornwell* v. *Mt. Morris Methodist Episcopal Church,* 73 W. Va. 96, 80 S.E. 148; *Beardsley* v. *Merry,* 136 Conn. 573, 72 A.2d 829; *De Trafford* v. *Tempest,* 21 Beav. Rep. 564, 52 Eng. Rep. 978, (all holding that there was a lapse into the gift of the balance or overplus) and *Allen* v. *White,* 97 Mass. 504; *Davis* v. *Davis,* 62 Ohio St. 411, 57 N.E. 317; and *Page* v. *Leapingwell, supra,* (holding to the contrary).

clause by using the term "of whatever nature" disposed of other real property in the unlikely event that she might die seized of other real estate by inheritance or the like.

Had there been no general residuary clause the case might stand differently. Appellees cite *Reid* v. *Corrigan,* 143 Ill. 402, 32 N.E. 387. But in that case the testator bequeathed to his wife all of his personal property of every description, as well as described real property. He left "all of the rest, residue, and remainder of all my real estate," to certain named relatives. He left complainant a legacy of $3,000, which manifestly could not be paid unless testator contemplated that it was a charge upon this latter gift. It was held that the $3,000 legacy was so charged. In the present case, however, there was a general residuary clause from which the cash legacies were intended to be paid.

Appellees also cite *In re Sutton's Estate,* 11 Del. Ch. 460 (Orphans' Ct.), 97 Atl. 624; *Cooney* v. *Whitaker,* 192 Mass. 596, 78 N.E. 751, and *Rhode Island Hosp. Trust Co.* v. *Hail,* 47 R.I. 64, 129 Atl. 832. *Sutton* merely held that "where a testator makes certain specific devises followed by a general residuary clause, the gift under the residuary clause is general and not specific, even when the land which so passed to the residuary devisee was owned by the testator at the time of the making of the will." In *Cooney,* as in *Reid* v. *Corrigan, supra,* testator bequeathed all his personal property. He also devised described real property. He then left "all the remainder of my real estate" to his three sons. There was no general residuary clause. It was contended that this last-quoted devise was as specific as the others, but the court held to the contrary, ruling that: "The English rule that all devises of real estate are to be regarded as specific is not in force in this state." The present appeal does not rest on the ancient English rule considered in these two cases. It turns

on the intention of the testatrix as shown by her will and the surrounding circumstances.

*Rhode Island Hosp. Trust Co.* v. *Hail, supra,* likewise is distinguishable. After making devises of designated real property, certain specific bequests and a pecuniary legacy, testator devised to his brother all the residue of his real estate. He left the residue of his personal estate in trust for his widow. The question was from what assets the statutory share of a pretermitted child should be paid. The court held that it should be taken from the residuary personal estate, noting that "the residue of the real estate was not included in a general residuary devise and bequest of the testator's residuary estate." The court stated obiter dictum that the devise to the brother was general. This dictum is inapplicable in the present case, both by reason of the identifying language of the will itself read in the light of the surrounding circumstances, and also by reason of the applicability here of *Grise* v. *Weiss, supra.*

Having concluded that the gift of real property made by Article Seventh was specific and not residuary for purposes of abatement, I accordingly conclude that it is to be preferred to the general pecuniary legacies. This is true irrespective of any distinction between gifts of real and personal property, both specific bequests and specific devises being preferred to general legacies. 4 Page, *Wills,* §§ 1500, 1507 (3d ed.) ; 57 Am. Jur., *Wills,* §§ 1459, 1461.

Appellants contend that the specific bequests, consisting of jewelry and objects of art, personal and household effects, an automobile, 750 shares of United Fruit Company stock, and 500 shares of Consolidated Amusement Company stock, should be abated as well, before any abatement of the gift of real property made by Article Seventh. Reliance is had on the principle that all of the personal property must be exhausted before resorting to the real property. "At common law the personal property of the

testator was the fund from which his debts and legacies were to be paid * * * devises of realty could not be taken for any debts unless testator had charged his debts upon such realty." 4 Page, *Wills*, § 1508 (3d ed.) ; 16 Am. Jur., *Descent and Distribution*, § 117.

As noted in Page, statutes now provide for sale of real property for payment of debts. In this jurisdiction, R.L.H. 1955, § 317-27 provides, as well, for sale of real property for payment of expenses of administration, family allowance and taxes. Additionally the statute provides for sale of real property "whenever such sale appears to the court to be for the best interests of the estate and not inconsistent with the will * * *." A sale may be made for any of these reasons "whether or not the personal property of the estate has been exhausted." See also R.L.H. 1955, § 317-14, relating to possession and control of the real estate pending administration, and determination of heirs or devisees. Such provisions of the Hawaii statutes have given the probate court jurisdiction over the real property of a decedent which it otherwise would not have had at all,[7] or would have had only if the personal property was exhausted.[8] It would be logical to conclude that these statutes abrogated the common law distinction between

---

[7] See *Chun Ming* v. *Ho*, 45 Haw. 521, 535, 371 P.2d 379, 390.

[8] See S.L. 1876, c. 57, reading :
"WHEREAS, doubts have arisen as to the jurisdiction of the Probate Courts of this Kingdom to order the sale of real estate of deceased persons for the purpose of paying their debts ; and it is expedient to remove such doubts, therefore,

*Be it Enacted by the King and the Legislative Assembly of the Hawaiian Islands, in the Legislature of the Kingdom assembled:*

"SECTION 1. That the Probate Courts of this Kingdom have had from the time of their establishment, and now have, and hereafter shall continue to have jurisdiction to order and decree the sale of any real estate of deceased persons for the purpose of paying their debts, whensoever the personal estate of such deceased persons shall prove to be insufficient for the purpose."

This was the predecessor of R.L.H. 1955, § 317-27.

real and personal property in matters of abatement. In 57 Am. Jur., *Wills*, § 1461, it is said to be the majority rule that such distinction no longer exists. Certainly when the reason for a rule ceases to exist the rule does also, and the reason for the rule requiring payment of debts out of personalty was the lack of control of the probate court over the real estate. See *Valentin* v. *Ena*, 18 Haw. 588, 590, followed in *Estate of Lalakea*, 26 Haw. 243, 264.[9]

The defect in reasoning that the common law distinction between real and personal property in matters of abatement has been abolished lies in the further provisions of section 317-27, now considered. The legislature has taken pains to provide that a sale made under section 317-27 shall not change the character of the proceeds.[10] Some such provision has been in the statute ever since 1911, when it was first provided[11] that real property might be sold before exhausting the personal property. One cannot escape the conclusion that it was the intention of the legislature to perpetuate the common law distinction between gifts of real property and gifts of personal property. Acceptance of that conclusion is implicit in the reasoning of *Estate of Rowat, supra,* which rests on the creation of a residue "without distinguishing in that connection between personalty and realty, blending the two classes of property to pass as far as possible under that term." (31 Haw. at 95.)

In the present case Article Seventh of the will, following the statement of "principal purpose" in creating the trust above set out, declared a second purpose as follows: "It is also my desire that my real property be sold by my

---

[9] *Beckley* v. *Metcalf*, 5 Haw. 625, has been cited. In that case the Chancellor undertook to state the common law rule but the point here at issue clearly was not involved as appears from the opinion on appeal.

[10] See note 6 of the main opinion.

[11] S.L. 1911, c. 121, § 1.

Trustee, to the extent feasible, so that the beneficiaries of my estate shall receive property in sole ownership rather than undivided interests in my real property." Supplementing this statement and the statement of "principal purpose" was the following: "I direct that the provisions of this Will shall be liberally construed to accomplish this purpose and desire."

It is argued by appellants that this was not a mandatory provision for sale and that the doctrine of equitable conversion does not apply. This argument rests upon the words "to the extent feasible" and upon provisions of what appears to be a standard trust provision included in Article Seventh. I find it unnecessary to pass upon the question whether this will worked an equitable conversion. Irrespective of the answer to that question, the result is the same. The reason is that a direction to sell real property in order to divide the proceeds among the beneficiaries does not charge the real property with debts as though it were personalty. As stated in 5 Page, *Wills*, § 46.9 at 590 (Bowe-Parker Rev.):

> "Conversion is operative only for the purpose for which such change of the legal character of the property was directed by the testator. Conversion of realty into personalty does not charge the property with debts as though it were personalty, unless the conversion is ordered for the purpose of paying debts. Conversion of personalty into realty does not relieve the personalty from contribution with other personalty in abatement. * * *"

*Accord, Newby* v. *Skinner,* 21 N.C. 488; *Graham* v. *Little,* 40 N.C. 407; *In re Broderick,* 163 App. Div. 91, 148 N.Y. Supp. 541; *In re Bump's Estate,* 171 Kan. 442, 233 P.2d 478; see also *McFadden* v. *Hefley,* 28 S.C. 317, 5 S.E. 812, which held that a gift of money to be invested by the executors in a homestead, the title to be in testator's

daughter, was subject to debts as personal property and not to be treated as real estate. *Cf., Weed* v. *Hoge,* 85 Conn. 490, 83 Atl. 636, which turned on the Connecticut statute there involved, and is inapplicable here except in its holding that the gift of land made by Article Seventh was specific.

Since I am unable to find in the will any guide to the intention of the testatrix as to the payment of debts, expenses and taxes, other than Article *First* which refers to Article Sixth on pages 12-15 of the will, and that provision has proved inadequate, I therefore apply the presumption "that the will was drawn with the established principles, relating to the order of priorities in the abatement of legacies, in mind." *Knox* v. *Stamper,* 186 Md. 238, 46 A.2d 361. In arriving at this conclusion I do so reluctantly, for I am persuaded that with respect to the preference accorded specific devises of real property over specific bequests of personal property, this presumption does violence to the intention of the ordinary testator. However, as further stated in *Knox:*

"* * * Whatever arguments there may be in favor of abolishing the common law distinctions between the liabilities of real and personal property, we are not prepared to do so, in the absence of legislative action * * *."

There nevertheless is a limit on the application of the presumption in this case. As appears from the above-cited cases, the preference applies strictly to property which, at the time of testatrix' death, was real property. Under the views expressed in this opinion the rights of the parties with respect to the payment of State inheritance taxes must be considered.

By statute, the inheritance taxes imposed by the State are to be deducted from the property distributed or collected from the distributees, and the sums retained or

collected are to be paid over by the executor to the State. R.L.H. 1955, §§ 122-20, 122-29. The tax is imposed on the transfer. *Brown* v. *Treasurer*, 20 Haw. 41; *Robinson* v. *Treasurer*, 22 Haw. 742; *cf.*, *Estate of Dillingham*, 25 Haw. 129.

Article First provided for payment of these taxes "out of my residuary estate," but the residuary estate (Article Sixth on pages 12-15 of the will) was insufficient for the purpose. If this were all, the direction for payment of these taxes would fail completely. However, Article First made a further provision which must be considered, to wit:

"My Executor shall not seek to recover any such tax or any part thereof from any person receiving property by which the tax is measured."

Paragraph 10 of the judgment below reads as follows: "10. The Hawaii inheritance tax shall be treated the same as decedent's debts, administration expenses and the federal estate tax and the executor shall not seek to withhold or recover the same from the recipients of the property by which the tax is measured."

This is premised on paragraph 7 of the judgment reading:

"7. Any deficiency in the payment of the debts, administration expenses and estate and inheritance taxes of decedent's estate remaining after all of decedent's residuary estate, as defined in paragraph 2 above, has been applied thereto shall be satisfied out of the rest, residue and remainder of decedent's real property referred to in Article SEVENTH on page six of decedent's will."

That paragraph 10 is premised on paragraph 7, appears from paragraph 8 which provides how a deficiency shall be met "if any deficiency remains after application of the rest, residue and remainder of decedent's real property as aforesaid * * * ." There is no instruction as to

how a deficiency shall be met if the gift of real property made by Article Seventh cannot be applied as instructed in paragraph 7 of the judgment and no instruction as to how paragraph 10 is to be carried out in that event.

Paragraph 7 was designated in the notice of appeal as a part of the judgment from which appeal was taken, but paragraph 10 was not so designated. However, paragraph 10 falls if paragraph 7 on which it is based falls. Appellants cannot claim the benefit of paragraph 10 while rejecting paragraph 7. Therefore, to obtain the relief sought appellants must sustain their fifth specification of error reading:

"5. The Court erred in failing to conclude as law and to adjudge that the gift of real property made in Article SEVENTH at page six of decedent's will can be resorted to in abatement, for payment of debts, administration expenses and taxes, only after all gifts of personal property made by decedent in her will have been exhausted."

From what already has been said it follows that I would sustain this specification as to the debts, administration expenses, and federal estate taxes. But I would not sustain it as to the State inheritance taxes. The direction that the executor pay the State inheritance taxes was a gift to the donees involved. It was a gift of personalty. The devisees enjoy no preference in respect of the tax on the gifts to them merely because of the preferred position of real property.

In summary, I have concluded that (1) the general order of abatement is *first,* general cash legacies, *second,* specific bequests, and *third,* specific devises; (2) the gift of real property made by Article Seventh on pages 6-12 of the will was a specific devise, was not residuary, and stands on a par with the four other devises in matters of abatement; and (3) the direction to the executor to pay the

State inheritance taxes was a gift of personalty. I then am left with these questions—

Does the gift of personalty made by the direction to the executor to pay State inheritance taxes fail entirely? Or is this direction to be carried out, at least in part, by abatement of the general cash legacies? If the latter, do the general cash legacies abate completely or only partially?

In my view, the case should be remanded for decision of these questions.